**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC.<br>501 School Street, SW, Suite 500<br>Washington, D.C. 20024, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. |
| U.S. DEPARTMENT OF COMMERCE,<br>14th Street and Constitution Avenue, N.W.<br>Washington, D.C. 20230, | ) ) ) ) | |
| and | ) ) | |
| CARLOS GUTIERREZ, in his official capacity as<br>Secretary of the U.S. Department of Commerce,<br>14th Street and Constitution Avenue, N.W.<br>Washington, D.C. 20230, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING
ORDER AND/OR PRELIMINARY INJUNCTION AND
REQUEST FOR EXPEDITED HEARING**

Plaintiff Judicial Watch, Inc. ("Judicial Watch"), by counsel, and pursuant to Rules 7 and

65 of the Federal Rules of Civil Procedure and Local Civil Rules 7(a) and 65.1, respectfully

requests that the Court temporarily restrain and/or preliminarily enjoin Defendants U.S. Secretary

of Commerce Carlos Gutierrez and the U.S. Department of Commerce ("DOC") from

continuing to fail to comply with the requirements of the Federal Advisory Committee Act

("FACA"). Defendants have established certain "advisory committees," as that term is defined

under FACA (5 U.S.C. App. 2 § 3(2)), known as the North American Competitiveness Council

("NACC") and its component subcommittees, but have failed to comply with the applicable statutory requirements. *Id.* at § 10.

In support of this Application, Plaintiff respectfully directs the Court's attention to the following Memorandum of Law, the accompanying Declaration of Christopher J. Farrell (Exhibit A) ("Farrell Decl.") and attached exhibits, and the Proposed Order submitted herewith.

**REQUEST FOR EXPEDITED HEARING**

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rules 65.1(d) and 78.1, Plaintiff respectfully requests that this Court schedule a hearing on Plaintiff's Application for a Temporary Restraining Order And/Or Preliminary Injunction on or before August 16, 2007, in order to prevent Defendants' from closing to the public and to Plaintiff the upcoming meeting of the NACC scheduled for August 20-21, 2007 in Montebello, Canada. As demonstrated by the accompanying Certificate of Counsel Pursuant to Fed. R. Civ. Proc. 65(b)(2) and Local R. 65.1(a), Defendants have received notice of the time and making of this Application, and copies of all pleadings and papers filed have been provided to Defendants. The circumstances compelling the filing of this Application support and justify the Request for Expedited Hearing.

**MEMORANDUM OF LAW**

I.    **Factual Background.**

A.    **Establishment and Membership of the NACC.**

On March 23, 2005, U.S. President George W. Bush, Mexican President Vincente Fox, and Canadian Prime Minister Paul Martin reportedly met in Waco, Texas for a summit of North American leaders. Farrell Decl. ¶ 4. The principal outcome of this meeting was the creation of the Security and Prosperity Partnership of North America ("SPP"), which has been described as a

cooperative effort of the governments of the United States, Mexico, and Canada to address numerous areas of mutual concern, including the movement of goods, traveler security, energy, environment, and health. *Id.*

Subsequently, on March 15, 2006, Defendant Gutierrez, Canadian Deputy Minister of Industry Suzanne Hurtubise, and Dr. Alberto Ortega, a representative of Mexican President Vicente Fox, met with senior business leaders in Washington, D.C. to solicit the views of the North American business community on priorities for the SPP, as well as recommendations from business leaders on how the SPP could help their companies become more competitive, reduce the cost of doing business, cut red tape, and eliminate unnecessary barriers to trade in North America. Farrell Decl. ¶ 5. Also discussed was the possible creation and institutionalization of a "North American Competitiveness Council." *Id.*

Following this March 15, 2006 meeting, a framework for the NACC was reached trilaterally. Farrell Decl. ¶ 6. It was agreed that the NACC would provide recommendations on issues concerning North American competitiveness that could be addressed through the SPP. *Id.*

On March 30-31, 2006, President Bush, President Fox, and Prime Minister Harper held a series of meetings in Cancun, Mexico to discuss various North American priorities, including the SPP and "North American Competitiveness." Farrell Decl. ¶ 7. One meeting between President Bush, President Fox, Prime Minister Harper, and private sector representatives from each country addressed the proposed structure of the NACC. *Id.* Subsequent to these meetings, Defendant U.S. Department of Commerce reportedly worked with the Council of the Americas, the U.S. Chamber of Commerce, and other interested parties to formalize the NACC by facilitating interaction between representatives from the three governments and the private sector. *Id.* at ¶ 8.

On June 15, 2006, Defendant Gutierrez, Mexican Economy Minister Sergio Garciade Alba, Canadian Minister of Interior Maxime Bernier, and North American business leaders met in Washington, D.C. to officially launch the NACC. Farrell Decl. ¶ 9. According to a press release issued by Defendant U.S. Department of Commerce, on that same date, the NACC "is made up of high level business leaders from each country" who will meet annually with representatives of the United States, Mexican, and Canadian governments "to provide recommendations and priorities on promoting North American competitiveness globally." *Id.* at ¶ 10. According to the U.S. Chamber of Commerce, Secretary Gutierrez expressed a desire to "institutionalize" the SPP and the NACC, so that its work will continue through changes in administrations. *Id.* at ¶ 9.

As officially launched by Defendant Gutierrez and his counterparts in Mexico and Canada on June 15, 2006, the NACC is comprised of thirty-five (35) members of the business community. Farrell Decl. ¶ 12. Each country determines its own members and the membership selection process. *Id.* The U.S. component of the NACC is comprised of fifteen (15) members, all of which are large, for-profit corporations.[1] *Id.* The Mexican and Canadian components of the NACC are comprised of ten (10) members each, all of whom appear to be heads of major Mexican and Canadian business interests. *Id.* None of the NACC's members are full-time officers or employees of the U.S. government. *Id.* A complete list of members of the NACC is attached as Exhibit 5 to the Farrell Declaration.

---

[1]     Prior to the June 15, 2006 launch of the NACC, an organizational meeting of the U.S. section of the NACC had been held on May 26, 2006, attended by Defendant Gutierrez and more than one hundred business leaders and government officials and employees. Farrell Decl. ¶ 11.

Defendants, as well as the governments of Mexico and Canada, each designated organizations in their respective countries to serve as "Secretariats" and to help collect input from the business community. Farrell Decl. ¶ 13. Defendants selected two business groups, the Council of the Americas and the U.S. Chamber of Commerce, to serve jointly as the "Secretariat" for the United States. *Id.*

According to the U.S. Chamber of Commerce, Defendants, as well as the governments of Mexico and Canada, have committed to participate in "ministerial-level" meetings with the NACC annually. Farrell Decl. ¶ 14. The NACC also meets with "senior government officials" "two to three times per year" to "engage on an on-going basis to deliver concrete results." *Id.*

Also according to the U.S. Chamber of Commerce, the U.S. component of the NACC is composed of an Executive Committee and an Advisory Committee. Farrell Decl. ¶ 15. The Executive Committee is comprised of the fifteen (15) U.S. members of the NACC. *Id.* Each member is charged with representing the sector in which its business operates. *Id.* The Advisory Committee is comprised of more than 200 U.S. corporations, business associations, and local chambers of commerce. *Id.* The Advisory Committee provides advice and recommendations to the Executive Committee. *Id.* Also according to the U.S. Chamber of Commerce, the U.S. component of the NACC, which refers to the Executive Committee, meets twice a year with the Secretary of Commerce and "additional meetings at the working group level" are scheduled "as needed." *Id.* at ¶ 16.

The NACC met on August 15, 2006 in Washington, D.C. Farrell Decl. ¶ 17. This apparently was the first formal meeting of the NACC. *Id.* Subsequently, Defendant Gutierrez and his counterparts from Mexico and Canada, met with the NACC on February 23, 2007 in

Ottawa, Canada. *Id.* at ¶ 18. At this meeting, the NACC issued a report containing over fifty (50) recommendations regarding border-crossing facilitation, standards and regulatory cooperation, and energy integration. *Id.* That same day, Defendant Gutierrez and his counterparts in Mexico and Canada issued a press release acknowledging their receipt of the NACC's report and recommendations. *Id.* at ¶ 19. The press release that states that "[o]ur respective governments will review the report and consider carefully its recommendations in preparation for the next leaders' meeting." *Id.* The press release further states that "[w]e will continue to work with the NACC and other stakeholders as we strive to make North America the safest and best place to live, invest and prosper." *Id.*

The next "leaders" meeting will take place on August 20-21, 2007 in Montebello, Canada. Farrell Decl. ¶ 20. Upon information and belief, the NACC also will be meeting on or about these same dates in Montebello, Canada, in conjunction with the "leaders" meeting. *Id.*

**B.    Plaintiff's Investigation of the NACC.**

In furtherance of its public interest mission, Plaintiff began investigating the activities of the SPP and the NACC in approximately July 2006. Farrell Decl. ¶ 2. In August 2006, Plaintiff sent Freedom of Information Act ("FOIA") requests to various federal agencies, including Defendant U.S. Department of Commerce, seeking access to records regarding the creation, membership, operating guidelines, and meetings of the NACC, among other topics. *Id.* at ¶ 3. Plaintiff subsequently made further FOIA requests to various federal agencies, including again Defendant U.S. Department of Commerce, seeking access to additional records regarding the NACC. *Id.*

On March 23, 2007, Plaintiff submitted a request to the U.S. Chamber of Commerce, one of the organizations designated by Defendants to serve as Secretariat for the U.S. component of the NACC, asking that it be allowed to "participate in all future meetings of the NACC, to include Ministerial, Executive Committee and Advisory Committee meetings." Farrell Decl. ¶ 21. By letter dated April 19, 2007, the U.S. Chamber of Commerce informed Plaintiff that only invited officials and members of the Executive Committee of the NACC could participate in "Ministerial" meetings. *Id.* at ¶ 22. The U.S. Chamber of Commerce also informed Plaintiff that membership in the Executive Committee was "by definition only open to companies" and that the Advisory Committee is "only open to companies, sectoral associations, and local chambers of commerce." ¶ *Id.*

Subsequently, on July 26, 2007, Plaintiff submitted a request to Defendants asking that they acknowledge that the NACC and its U.S. component subcommittees are advisory committees under FACA. Farrell Decl. ¶ 23. Plaintiff's letter also requested Defendants bring the NACC and its U.S. component subcommittees into compliance with all appropriate laws and regulations, including FACA's requirements that meetings be open to Plaintiff and members of the public and that all records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agendas, or other documents made available to or prepared by the NACC and its U.S. component subcommittees be made available to Plaintiff pursuant to the provisions of FOIA. *Id.* As of August 10, 2007, Defendants have not responded to Plaintiff's request. *Id.* at 24.

As a not-for-profit, tax exempt, educational organization that seeks to promote integrity, transparency, and accountability in government, Plaintiff has been and continues to be damaged by Defendants' refusal to allow it access to the meetings and records of the NACC and its U.S.

component subcommittees. Farrell Decl. ¶ 25. Not only has Defendants' refusal thus denied

Plaintiff the ability to obtain information and records about the SPP and the NACC, but it also is

restricting Plaintiff's ability to disseminate such information and records to the public and is

limiting Plaintiff's ability to carry out its public interest mission in general. *Id.*

Moreover, public confidence in the integrity of the U.S. government as a whole has been

and will be harmed by the appearance that Defendants are meeting with and obtaining

recommendations and advice from a few, select members of major corporations, each with their

own self interests, in order to formulate government policy. Farrell Decl. ¶ 26. Defendants'

actions also create the appearance that members of the NACC and its U.S. component

subcommittees may gain favor or influence with Defendants and/or the U.S. government by

participating in the NACC process, to the detriment of others who are not allowed to participate,

thus further undermining public confidence in government. *Id.*

## II.    Discussion.

### A.    Standard for A Temporary Restraining Order and A Preliminary Injunction.

In order to prevail on an application for a temporary restraining order or preliminary

injunction, a plaintiff must demonstrate the following: (1) a substantial likelihood of success on

the merits; (2) that the plaintiff will suffer irreparable harm for which there is no adequate legal

remedy absent the relief requested; (3) that the harm to the plaintiff if relief is denied outweighs

any harm to the opposing party if relief is granted; and (4) that the public interest supports

granting the requested relief. *See Cityfed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738,

746 (D.C. Cir. 1995). No single factor is dispositive. Rather, a court "must balance the strengths

of the requesting party's arguments in each of the four required areas." *Id.* at 747. "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Id.* In addition, during the initial proceedings on applications for temporary restraining orders and/or preliminary injunctive relief, a court may consider sworn declarations and other credible evidence in the record even if such evidence might not meet all of the formal requirements for admissibility at trial. *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (decision on preliminary injunction may be made "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits"); *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004) (same).

**B.    There Is a Substantial Likelihood That the Plaintiff Will Succeed on the Merits of this Case.**

Although Plaintiff need not demonstrate an absolute certainty of success on the merits, it is very likely that it will succeed on the merits in this matter.[2] As discussed herein, Defendants are violating FACA by establishing and utilizing the NACC and it U.S. component subcommittees without complying with the requirements of the statute.

FACA sets out a "comprehensive scheme" designed "to control the creation and operation of advisory committees" within the executive branch. *Center for Auto Safety v. Cox*, 580 F.2d 689, 692 (D.C. Cir. 1978). The central purpose of FACA is to "control the advisory committee process and to open to public scrutiny the manner in which government agencies

---

[2]    S*ee Udall v. D.C. Transit System, Inc.*, 404 F.2d 1358, 1359 n.3 (D.C. Cir. 1968) ("[O]n a motion for a preliminary injunction it is not necessary and it is not appropriate to make a definitive decision on such a question [*i.e.*, the merits of the claim], but merely to reach the conclusion that there is a strong likelihood that at trial the plaintiff will prevail.") (quotation marks and citation omitted).

obtain advice from private individuals and groups." *Cummock v. Gore*, 180 F.3d 282, 285 (D.C. Cir. 1999) (citations omitted); *see* 5 U.S.C. App. 2 § 2.

FACA imposes a number of requirements on committees established or utilized by the President or federal agencies to obtain advice or recommendations ("advisory committees"). 5 U.S.C. App. 2 § 2 *et seq.* FACA defines "advisory committee," in relevant part, to include any "committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof . . . established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government." 5 U.S.C. App. 2 § 3(2). Advisory committees that meet this definition are subject to FACA's requirements unless specifically exempted by statute. *Id.* at § 4.

Requirements under FACA include, but are not limited to, the following: (i) that all meetings be open to the public; (ii) that notice of each meeting be published in the Federal Register; (iii) that interested persons be allowed to attend, appear before, or file statements with the advisory committee; and (iv) that records, reports, transcripts, minutes, appendices, working papers, drafts, studies, agendas, and other documents made available to or prepared for or by the advisory committees be made available through the provisions of FOIA. *See, e.g.*, 5 U.S.C. App. 2 §§ 10(a)(1-3) and (b). *See also Food Chemical News v. Dep't of Health and Human Services*, 980 F.2d 1468, 1472 (D.C. Cir. 1992) ("section 10(b) [of FACA] affirmatively obligates the Government to provide access to identified materials").

In this case, the NACC and its U.S. component subcommittees constitute advisory committees as that term is defined by FACA. 5. U.S.C. App. 2 § 3(2). Defendants have

established and are utilizing the NACC and its U.S. component subcommittees as advisory committees, but have not complied with the applicable provisions of FACA. Among other things, Defendants are permitting the NACC and its U.S. component subcommittees to meet and deliberate without complying with FACA's open meeting and disclosure requirements. 5 U.S.C. App. 2 §§ 10(a)(1-3) and (b). Defendants have ignored Plaintiff's request that meetings of the NACC and it U.S. component subgroups be opened to the public and Judicial Watch, including, in particular, the upcoming August 20-21 meeting in Montebello, Canada. Defendants also have failed to allow Plaintiff access to the records of the NACC and its U.S. component subcommittees, thereby denying Plaintiff the ability disseminate such information to the public. As a result, Defendants have and are continuing to act in violation of FACA.

Because Defendants' actions plainly are contrary to law, Plaintiff will likely succeed on the merits of its claim.

**C.     Plaintiff Is Suffering Irreparable Harm as a Result of the Defendants' Willful Disregard of Their Obligation Under FACA.**

Irreparable harm is an injury for which the court cannot compensate should the movant prevail. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Assoc. v. Federal Power Comm.*, 259 F.2d 921, 925 (D.C. Cir. 1958)). "[I]t is well-established that acts by Government agencies in derogation of statutory rights of the public or certain individual members of the public can constitute irreparable injury." *Gates v. Schlesinger*, 366 F. Supp. 797, 800 (D.D.C. 1973). To obtain preliminary injunctive relief, a petitioner must show that the threatened injury is not merely "remote and speculative." *Milk Indus. Found. v. Glickman*, 949 F. Supp. 882, 897 (D.D.C. 1996).

The next meeting of the NACC is believed to be on August 20-21, 2007, in Montebello, Canada. Farrell Decl. ¶ 20. Defendants have ignored Plaintiff's request to allow it and members of the public to attend and/or participate in this meeting to the extent permitted under FACA. *Id.* at 23-24. Absent relief from this Court, Plaintiff's right under FACA to attend and/or participate in the NACC's Montebello meeting will be "permanently lost." *Gates v. Schlesinger*, 366 F. Supp. 797, 801 (D.D.C. 1973) (preliminary injunction issued because plaintiffs demonstrated irreparable injury by being shut out of a public meeting, as was their right to attend under FACA); *Public Citizen v. Nat'l Economic Comm.*, 703 F. Supp. 113 (D.D.C. 1989) (plaintiffs entitled to a temporary restraining order and eventually granted a permanent injunction because plaintiffs demonstrated irreparable injury by being shut out of a public meeting, as was their right to attend under FACA). Once this statutory right is denied, it cannot be undone. Furthermore, this harm to Plaintiff is neither remote or speculative as the meeting is scheduled for August 20-21, 2007. Farrell Decl. ¶ 20. Accordingly, absent relief from this Court, Plaintiff will be irreparably harmed.

     **D.**     **Entry of a Temporary Restraining Order and/or Preliminary Injunction Will Not Cause Harm to Other Parties.**

In contrast to Plaintiff's immediate and irreparable injury, Defendants will suffer no injury by the relief requested herein. Indeed, Defendants can suffer no cognizable harm by an injunction that prevents them from acting in a manner contrary to law. *Gates*, 366 F. Supp. at 801 (holding that agency suffers no injury "in being obliged to conform to the open meeting requirement imposed by [FACA].") Rather than harming Defendants, relief from this Court

"will highlight vividly the essence of our democratic society, providing the public its right to know its government is conducting the public's business." *Public Citizen*, 703 F. Supp. at 129.

### E.      Entry of a Temporary Restraining Order and/or Preliminary Injunction Is in the Public's Interest.

The public interest is served by issuance of an injunction because of the public's interest in the government following the law and preventing a violation of statutory rights. As stated by this Court in *Gates*, the "public interest will be best served by requiring strict compliance with the letter and spirit of the Federal Advisory Committee Act." 366 F. Supp. at 801.

The public also has a strong interest in ensuring that recommendations of advisory committees are developed in a open and transparent manner. One of the purposes of FACA is to regulate advisory committees which are too often "dominated by representatives of industry and other special interests seeking to advance their own agendas." *Cummock v. Gore*, 180 F.2d 282, 284-85 (citing H.R. REP. NO. 92-1017 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3491, 3496 ("One of the great dangers in the unregulated use of advisory committees is that special interest groups may use their membership on such bodies to promote their private concerns.").

The public interest therefore weighs heavily in favor of the relief requested herein.

## III.     Conclusion.

For the foregoing reasons, Plaintiff respectfully requests that the Court temporarily restrain and/or preliminarily enjoin Defendants from closing to Plaintiff or the public the meeting of the NACC, or any of its U.S. component subcommittees, in Montebello, Canada, on or about August 20-21, 2007.

Dated: August 10, 2007                    Respectfully submitted,

                                          JUDICIAL WATCH, INC.


                                          Paul J. Orfanedes
                                          D.C. Bar No. 429716
                                          Suite 500
                                          501 School Street, S.W.
                                          Washington, D.C.  20024
                                          (202) 646-5172


                                          James F. Peterson
                                          D.C. Bar No. 450171
                                          Suite 500
                                          501 School Street, S.W.
                                          Washington, D.C.  20024
                                          (202) 646-5172


                                          Meredith L. Di Liberto
                                          D.C. Bar No. 487733
                                          Suite 500
                                          501 School Street, S.W.
                                          Washington, D.C.  20024
                                          (202) 646-5172

                                          *Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC.<br>501 School Street, SW, Suite 500<br>Washington, D.C.  20024, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. |
| U.S. DEPARTMENT OF COMMERCE,<br>14th Street and Constitution Avenue, N.W.<br>Washington, D.C.  20230, | ) ) ) ) | |
| and | ) ) | |
| CARLOS GUTIERREZ, in his official capacity as<br>Secretary of the U.S. Department of Commerce,<br>14th Street and Constitution Avenue, N.W.<br>Washington, D.C.  20230, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**CERTIFICATE OF COUNSEL PURSUANT TO**
**FED. R. CIV. P. 65(b)(2) and LCvR 65.1(a)**

I, JAMES F. PETERSON, one of the attorneys for Plaintiff in the above-captioned case,

pursuant to Rule 65(b)(2) of the Federal Rules of Civil Procedure and Local Civil Rule 65.1(a),

certify that on this date at approximately 2:00 p.m. copies of the Complaint, Plaintiff's

Application for a Temporary Restraining Order and/or Preliminary Injunction, and all exhibits

thereto, were hand delivered the office of Defendant Secretary of Commerce Carlos Gutierrez.

Per the instructions of Margaret (202-482-2112) in his office, the documents were delivered to

the door of the Department of Commerce at 15th and Constitution (No. 10) which accepts

deliveries, and the Office of the Executive Secretariat (202-482-3934) was advised of its

delivery. Defendant was advised that the Application and related documents were being submitted to the Court on this date. The documents also were sent via overnight mail.

In regard to Defendant U.S. Department of Commerce ("DOC"), at approximately 12:00 p.m. on this date I contacted the Department's Office of General Counsel. I was advised by Michael (202-482-4772) to have the documents delivered, as they subsequently were, to the main door at 2:15 p.m. Defendant was advised that the Application and related documents were being submitted to the Court on this date. The documents also were sent via overnight mail.

Dated: August 10, 2007                          Respectfully submitted,

James F. Peterson
D.C. Bar No. 450171
Suite 500
501 School Street, S.W.
Washington, DC 20024
(202) 646-5172

EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC.<br>501 School Street, SW, Suite 500<br>Washington, D.C. 20024,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF COMMERCE,<br>14th Street and Constitution Avenue, N.W.<br>Washington, D.C. 20230,<br><br>and<br><br>CARLOS GUTIERREZ, in his official capacity as<br>Secretary of the U.S. Department of Commerce,<br>14th Street and Constitution Avenue, N.W.<br>Washington, D.C. 20230,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. |

## DECLARATION OF CHRISTOPHER J. FARRELL

I, Christopher J. Farrell, hereby declare as follows:

1.      I am the Director of Investigations and Research for Judicial Watch, Inc.

("Judicial Watch"), which is located at 501 School Street, SW, Suite 500, Washington, D.C.

20024. I make this declaration based upon my personal knowledge of the contents herein.

2.      In approximately July 2006, Judicial Watch, a not-for-profit, educational

organization that obtains and disseminates information about public issues and the operations of

government, began investigating the activities of the Security and Prosperity Partnership of North

-1-

America ("SPP") and the North American Competitiveness Council ("NACC").

3.      In furtherance of this investigation, Judicial Watch submitted Freedom of

Information Act ("FOIA") requests in August 2006 to various federal agencies, including

Defendant U.S. Department of Commerce ("DOC"), seeking access to records regarding the

creation, membership, operating guidelines, and meetings of the NACC, among other topics.

Judicial Watch subsequently submitted additional FOIA requests to various other federal

agencies, including again Defendant U.S. Department of Commerce, seeking access to additional

records regarding the NACC.

4.      Through its investigation, Judicial Watch has learned that on March 23,

2005, U.S. President George W. Bush, Mexican President Vincente Fox, and Canadian Prime

Minister Paul Martin met in Waco, Texas for a summit of North American leaders.  *See* Exhibit

1.  The principal outcome of this meeting was the creation of the SPP, which has been described

as a cooperative effort of the governments of the United States, Mexico, and Canada to address

numerous areas of mutual concern, including the movement of goods, traveler security, energy,

environment, and health.  *Id.*

5.      According to Judicial Watch's research, on March 15, 2006, Defendant Carlos

Gutierrez, Secretary of Defendant U.S. Department of Commerce, Canadian Deputy Minister of

Industry Suzanne Hurtubise, and Dr. Alberto Ortega, a representative of Mexican President

Vicente Fox, met with senior business leaders in Washington, D.C. to solicit the views of the

North American business community on priorities for the SPP, as well as recommendations from

business leaders on how the SPP could help their companies become more competitive, reduce

the cost of doing business, cut red tape, and eliminate barriers to trade in North America.  *See*

Exhibit 1. Also discussed was the possible creation and institutionalization of a "North American Competitiveness Council." *Id.*

6.     According to information publicly provided by the U.S. Chamber of Commerce, subsequent to the March 15, 2006 meeting, a framework for the NACC was reached trilaterally between the three governments, and it was agreed that the NACC would provide recommendations on issues concerning North American competitiveness that could be addressed through the SPP. *See* Exhibit 1.

7.     Also according to the the U.S. Chamber of Commerce, on March 30-31, 2006, President Bush, President Fox, and Prime Minister Harper held a series of meetings in Cancun, Mexico to discuss various North American priorities, including the SPP and "North American Competitiveness." *See* Exhibit 1. One meeting between President Bush, President Fox, Prime Minister Harper, and private sector representatives from each country addressed the proposed structure of the NACC. *Id.*

8.     Based on Judicial Watch's research, it was learned that after the March 2006 meeting in Cancun, Defendant U.S. Department of Commerce worked with the Council of the Americas, the U.S. Chamber of Commerce, and other interested parties to formalize the NACC by facilitating interaction between representatives from the three governments and  the private sector. *See* Exhibit 1.

9.     According to a Defendant U.S. Department of Commerce press release, on June 15, 2006, Defendant Gutierrez, Mexican Economy Minister Sergio Garciade Alba, Canadian Minister of Interior Maxime Bernier, and North American business leaders met in Washington, D.C. to officially launch the North American Competitiveness Council ("NACC"). *See* Exhibit

2.  According to the U.S. Chamber of Commerce, Secretary Gutierrez expressed a desire to "institutionalize" the SPP and the NACC, so that work will continue through changes in administrations.  *See* Exhibit 3.

10.     According to the same press release, the NACC "is made up of high level business leaders from each country" who will meet annually with representatives of the United States, Mexican, and Canadian governments "to provide recommendations and priorities on promoting North American competitiveness globally." *See* Exhibit 2.

11.     Prior to the June 15, 2006 launch of NACC, an organizational meeting of the U.S. section of the NACC had been held on May 26, 2006, attended by Defendant Gutierrez and more than one hundred business leaders and government officials and employees.  *See* Exhibit 4.

12.     Judicial Watch's investigation of the NACC, as officially launched by Defendant Gutierrez and his counterparts in Mexico and Canada on June 15, 2006 revealed that:

a.      the NACC  is comprised of thirty-five (35) members of the business community.  Each country determines its own members and the membership selection process;

b.      the U.S. component of the NACC is comprised of fifteen (15) members, all of which are large, for-profit corporations;

c.      the Mexican and Canadian components of the NACC are comprised of ten (10) members each, all of whom appear to be heads of major Mexican and Canadian business interests;

d.      none of the NACC's members are full-time officers or employees of the U.S. government.  A complete list of members of the NACC is attached hereto as Exhibit 5.

13.     According to the U.S. Chamber of Commerce, Defendant U.S. Department of

-4-

Commerce and Defendant Secretary Carlos Gutierrez, as well as the governments of Mexico and Canada, each designated organizations in their respective countries to serve as "Secretariats" and to help collect input from the business community. Defendants selected two business groups, the Council of the Americas and the U.S. Chamber of Commerce, to serve jointly as the "Secretariat" for the United States. *See* Exhibit 6.

14.     According to the same information provided by the U.S. Chamber of Commerce, Defendants, as well as the governments of Mexico and Canada, have committed to participate in "ministerial-level" meetings with the NACC annually. The NACC also meets with "senior government officials" "two to three times per year" to "engage on an on-going basis to deliver concrete results."

15.     Also according to the U.S. Chamber of Commerce, the U.S. component of the NACC is composed of an Executive Committee and an Advisory Committee and are comprised as follows:

   a.     the Executive Committee is comprised of the fifteen (15) U.S. members of the NACC. Each member is charged with representing the sector in which its business operates;

   b.     the Advisory Committee is comprised of more than 200 U.S. corporations, business associations, and local chambers of commerce. The Advisory Committee provides advice and recommendations to the Executive Committee.

16.     According to this same information provided by the U.S. Chamber of Commerce, the U.S. component of the NACC, which refers to the Executive Committee, meets twice a year with the Secretary of Commerce and "additional meetings at the working group level" are scheduled "as needed."

-5-

17.    The NACC met on August 15, 2006 in Washington, D.C.  According to a U.S.

Chamber of Commerce press release, this was the first formal meeting of the NACC.  *See*

Exhibit 7.

18.    According to media reports and information provided by the U.S. Chamber of

Commerce, Defendant Gutierrez and his counterparts in Mexico and Canada met with the NACC

on February 23, 2007 in Ottawa, Canada.  At the February 23, 2007 meeting, the NACC issued a

report containing over fifty (50) recommendations regarding border-crossing facilitation,

standards and regulatory cooperation, and energy integration.  *See* Exhibit 8.

19.    Also on February 23, 2007, Defendant Gutierrez and his counterparts in Mexico

and Canada issued a press release acknowledging their receipt of the NACC's report and

recommendations.  *See* Exhibit 9.  The press release states that "[o]ur respective governments

will review the report and consider carefully its recommendations in preparation for the next

leaders' meeting." *Id.*  The press release further states that "[w]e will continue to work with the

NACC and other stakeholders as we strive to make North America the safest and best place to

live, invest and prosper." *Id.*

20.    According to Canadian press reports, the next "leaders" meeting reportedly will

take place on August 20-21, 2007 in Montebello, Canada.  Based on a variety of sources, it

appears that the NACC also will be meeting on or about these same dates in Montebello, Canada,

in conjunction with the "leaders" meeting.

21.    On March 23, 2007, Judicial Watch submitted a request to the U.S. Chamber of

Commerce, one of the organizations designated by Defendants to serve as Secretariat for the U.S.

component of the NACC, asking that it be allowed to "participate in all future meetings of the

NACC, to include Ministerial, Executive Committee and Advisory Committee meetings." *See* Exhibit 10.

22.     By letter dated April 19, 2007, the U.S. Chamber of Commerce informed Judicial Watch that only invited officials and members of the Executive Committee of the NACC could participate in "Ministerial" meetings.  The U.S. Chamber of Commerce also informed Judicial Watch that membership in the Executive Committee was "by definition only open to companies" and that the Advisory Committee is "only open to companies, sectoral associations, and local chambers of commerce." *See* Exhibit 11.

23.     On July 26, 2007, Judicial Watch submitted a request to Defendants asking that they acknowledge that the NACC and its U.S. component subcommittees are advisory committees under FACA.  Judicial Watch's letter also requested Defendants bring the NACC and its U.S. component subcommittees into compliance with all appropriate laws and regulations, including FACA's requirements that meetings be open to Judicial Watch and members of the public and that all records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agendas, or other documents made available to or prepared by the NACC and its U.S. component subcommittees be made available to Judicial Watch pursuant to the provisions of FOIA.  *See* Exhibit 12.

24.     As of August 9, 2007, Defendants had not responded to Judicial Watch's request.

25.     As a not-for-profit, tax exempt, educational organization that seeks to promote integrity, transparency, and accountability in government, Judicial Watch has been and continues to be damaged by Defendants' refusal to allow it access to the meetings and records of the

NACC and its U.S. component subcommittees.  Not only has Defendants' refusal thus denied

Judicial Watch the ability to obtain information and records about the SPP and the NACC, but it

also  is restricting Judicial Watch's ability to disseminate such information and records to the

public and is limiting Judicial Watch's ability to carry out its public interest mission in general.

26.    Additionally, media reports and citizen involvement in the debate over SPP and

the NACC demonstrate that public confidence in the integrity of the U.S. government as a

whole has been and will be harmed by the appearance that Defendants are meeting with and

obtaining recommendations and advice from a few, select members of major corporations, each

with their own self interests, in order to formulate government policy.  Defendants' actions also

create the appearance that members of the NACC and its U.S. component subcommittees may

gain favor or influence with Defendants and/or the U.S. government by participating in the

NACC process, to the detriment of others who are not allowed to participate, thus further

undermining public confidence in government.

I declare under penalty of law that the foregoing is true and correct.  Executed on August

9, 2007 in the District of Columbia.

Christopher J. Farrell

EXHIBIT 1

<HOME   SMALL BUSINESS   ISSUES   MEDIA   CHAMBERS   ASSOCIATIONS   MEMBERS

**U.S. Chamber of Commerce**
Fighting For Your Business®

Member Login (M)    Join the Chamber

Search _____ →

---

**ISSUES**

Accomplishments
Chamber Testimony
Elections
Grassroots Alerts
**Index of Issues**
Letters to Congress
New 110th Congress
Policy Priorities
Regulatory Comments
State Resources
Litigation Center
Weekly Commentary

The Chamber
understands your
needs and protects
your interests and
livelihood as if they
are our own.
You've got a voice.

**JOIN ✪ TODAY**
and be heard.

About the Chamber
Careers
Events
FAQs
Hot Reprints
Programs
Publications

SPONSORED LINKS







---

Issues Center > Index of Issues > International

☑ **Share This Page**

# North American Competitiveness Council (NACC)

**February 23, 2007 - Initial Recommendations of the North American Competitiveness Council (NACC)**

- Enhancing Competitiveness In Canada, Mexico, and the United States: Private-Sector Priorities for the Security and Prosperity Partnership of North America (SPP)
- More Documents

..................................................................................................................

**Overview**

The Security and Prosperity Partnership of North America (SPP) provides the framework to ensure that North America is the safest and best place to live and do business. It includes ambitious security and prosperity programs to keep our borders closed to terrorism yet open to trade.

The SPP recognizes that our three great nations are bound by a shared belief in freedom, economic opportunity, and strong democratic institutions. Since June 2005, the Canadian, Mexican and U.S. governments have worked under its auspices to strengthen economic growth and competitiveness and enhance security in North America.

The SPP defined 300 "priorities" for action.  Having 300 priorities is clearly too many.  Moving forward, we saw we needed to focus the process and develop a real priority list.

That's where the NACC came in.

This is a very open and transparent process.  Literally hundreds of companies, sectoral associations, and local chambers of commerce have helped prepare our recommendations.  No one has ever been turned away.  This has made the process extremely robust, and it has only sharpened our focus on practical steps forward for North America.

The three governments established the NACC to collect guidance from the private sector.  Members were charged with helping the governments focus their efforts by applying a cost-benefit analysis to the ideas on the table in order to "prioritize the priorities."

One thing we North Americans all have in common — regardless of whether we are citizens of the United States, Canada, or Mexico — is that we are all pragmatists.  The North American Competitiveness Council reflects this reality.

Together, the NACC members and Secretariats from all 3 countries have prepared extensive recommendations on such issues as border crossing facilitation, standards and regulatory cooperation, and energy integration. The first report includes more than 50 recommendations, divided into those that we feel could be accomplished in 2007, before the end of 2008 and before the end of 2010. The NACC also provides suggestions on how the private sector itself can be part of the solution in promoting North American competitiveness.

In the initial set of recommendations presented to the Ministers, we are trying to start with the low-hanging fruit — generally, steps that can be taken to improve North America's competitiveness building on existing mechanisms and without displacing any ongoing consultations or initiatives.

While the focus is on actions in the short term, the NACC also proposes recommendations for actions in the medium and long term.

**Background**

On March 23, 2005, heads of government Vicente Fox, George Bush, and Paul Martin met in Waco, Texas

for a summit of North American leaders.

The principal outcome of this meeting was the launch of the Security and Prosperity Partnership of North America (SPP), a framework under which to advance various initiatives for regional cooperation toward a safer, more prosperous North America.

The SPP, as developed in a cooperative effort by the three governments and as detailed in a June 23, 2005 Report to Leaders, addresses numerous subjects of mutual interest and concern among the North American nations in areas as diverse as the movement of goods, traveler security, energy, environment, and health.

On January 10 and 11, 2006, in partnership with UPS, the Council of the Americas and the North American Business Committee convened a public/private sector dialogue on the SPP in Louisville, Kentucky. Approximately 50 government officials and business leaders from Canada, Mexico and the United States came together in Louisville for the discussion.

On March 15, 2006, the Council of the Americas and the U.S. Chamber of Commerce and co-hosted a meeting at the Council offices in Washington between senior business leaders and government officials from North America.

The purpose of the meeting, which included the participation of U.S. Secretary of Commerce Carlos Gutierrez, Canadian Deputy Minister of Industry Suzanne Hurtubise, and Dr. Alberto Ortega of the Mexican Presidency, was to solicit the views of the North American business community on priorities for the SPP, as well as recommendations from business leaders on how the SPP could help their companies be more competitive in the global market, reduce the cost of doing business, and any specific recommendations to cut red tape or eliminate unnecessary barriers to trade in North America.

They were also interested in the views of the North American business community on the possible creation of a North American Competitiveness Council (NACC). There was unanimous support among the private sector representatives for the creation and institutionalization of a NACC, and the Council of the Americas and the U.S. Chamber of Commerce agreed to jointly lead the U.S. Secretariat.

On March 30-31, 2006, President Bush, Prime Minister Harper and President Fox met in Cancun to discuss various North American policy priorities, among them SPP and "North American Competitiveness." As part of the agenda, the leaders also met with a group of private sector representatives on March 31, five from each country. The proposed structure of the NACC was addressed during this meeting and the private sector representatives pledged their commitment to the process.

Recognizing that private sector involvement is a key element to enhancing North America's competitive position in global markets and is the driving force behind innovation and growth, the creation of the NACC provides a voice for the private sector. The regular meetings between Ministers, senior officials, and the NACC, complemented by ongoing consultations with other interested stakeholders, will help ensure that the SPP remains a cornerstone of North American cooperation.

On June 15, U.S. Secretary of Commerce Carlos Gutierrez, Mexican Economy Minister Sergio Garcia de Alba and Canadian Minister of Industry Maxime Bernier met with North American business leaders in Washington, DC and the NACC was officially launched.

Charged with providing recommendations on issues concerning North American competitiveness that can be addressed through the SPP trilaterally or bilaterally, the NACC would address issues of immediate importance and provide high-level, strategic, medium to long term advice.

While the NACC was expected to develop recommendations focused primarily on issues to be addressed by governments, the NACC was also challenged to provide suggestions on how the private sector might itself be able to assist in promoting North America competitiveness as part of the solution.

The NACC will meet annually with Ministers responsible for both Security and Prosperity and several times per year with senior government officials.  The NACC will make recommendations to Leaders annually.

The NACC will build on existing mechanisms and will not displace any ongoing consultations or initiatives.

The NACC is comprised of 30 members with equal representation from each country, with each country determining its own members and the membership selection process being at each country's discretion.

After consulting with the private sector in their respective countries and developing an initial set of recommendations, the Secretariats from Canada, Mexico and the United States convened a meeting in Washington on August 15 to reach consensus on an initial set of priorities for the NACC to focus on.

Together, the NACC members and Secretariats from all 3 countries have prepared extensive recommendations on such issues as border crossing facilitation, standards and regulatory cooperation, and

energy integration.

The full NACC will deliver its consensus recommendations to the relevant ministers in Canada, Mexico and the United States in February 2007 and to Presidents Bush and Calderón and Prime Minister Harper later in the year.

The first report includes more than 50 recommendations, divided into those that we feel could be accomplished in 2007, before the end of 2008 and before the end of 2010. The NACC also provides suggestions on how the private sector itself can be part of the solution in promoting North American competitiveness.

Frequently Asked Questions (FAQs) (PDF)
NACC Overview (PDF)
NACC Background (PDF)
Members (PDF)
Secretariats (PDF)
Security and Prosperity Partnership of North America (SPP)
SPP Report to Leaders – August 2006
SPP Security Annex (PDF)
SPP Prosperity Annex (PDF)
NACC Press Release for February 23, 2007 Ministerial  (PDF)
Press Release for August 15, 2006 Meeting (PDF)
Louisville, KY SPP Report - January 10-11, 2006 (PDF)

Join | Login | Search | Sitemap | Contact Us | Terms & Conditions | Privacy Policy | Employment Opportunities | ChamberStore

Copyright © 2007 U.S. Chamber of Commerce 1615 H St NW Washington DC 20062-2000 All Rights Reserved
*Advancing human progress through an economic, political and social system based on individual freedom, incentive, initiative, opportunity, and responsibility.*

EXHIBIT 2



**FOR IMMEDIATE RELEASE**
**Thursday, June 15, 2006**

## UNITED STATES, CANADA AND MEXICO LAUNCH NORTH AMERICAN COMPETITIVENESS COUNCIL

### *U.S. Secretary of Commerce Carlos Gutierrez, Mexican Secretary of Economy Sergio Garcia de Alba and Canadian Minister of Industry Maxime Bernier meet with North American Business Leaders*

**Washington, DC -** U.S. Commerce Secretary Carlos Gutierrez, Mexican Economy Minister Sergio Garcia de Alba and Canadian Minister of Industry Maxime Bernier today met with North American business leaders to officially launch the North American Competitiveness Council (NACC). In March, U.S. President Bush, Canadian Prime Minister Harper, and Mexican President Fox, announced the creation of the NACC as a priority to their commitment to the Security and Prosperity Partnership of North America (SPP).

"Today is a continuation of President Bush's strong commitment to our North American partners to focus on North America's security and prosperity," said Commerce Secretary Carlos Gutierrez. "The private sector is the driving force behind innovation and growth, and the private sector's involvement in the SPP is key to enhancing North America 's competitive position in global markets."

The NACC is made up of high level business leaders from each country. Each country's council consists of ten members who will meet annually with the SPP Prosperity and Security Ministers to provide recommendations and priorities on promoting North American competitiveness globally. In addition, the governments of North America will work with the NACC to remove barriers in order to increase the competitiveness of North American firms in the global marketplace and spur economic growth.

Also today, the SPP Prosperity Ministers, Secretary Gutierrez,

Secretary Garcia de Alba and Minister Bernier, met to take stock of progress on the Prosperity component of the SPP. The SPP Security Ministers, Homeland Security Secretary Michael Chertoff, Canadian Minister of Public Safety Stockwell Day and Mexican Secretary of Interior Carlos Abascal, are also taking stock of progress on the Security component with a view to releasing a report in July. The Security and Prosperity Ministers will hold a meeting with the NACC in early fall 2006 to discuss their priorities. They will also discuss updates to the work plans and consider new initiatives.

On March 23, 2005, leaders of North America launched the SPP. This initiative is meant to reduce trade barriers and facilitate economic growth, while improving the security and competitiveness of the continent. The leaders of North America affirmed their commitment to the SPP when they met on March 31, 2006 in Cancun, Mexico.

The SPP is built on the North American Free Trade Agreement between the United States, Canada and Mexico (NAFTA) which entered into force on January 1, 1994. NAFTA created the world's largest free trade area, which now links 435 million people producing $13.8 trillion worth of goods and services. Total trade among all three NAFTA partners has grown from $296.7 billion in 1993 to $807.4 billion in 2005, an increase of 172 percent. The dismantling of trade barriers and the opening of markets has led to economic growth and rising prosperity in all three countries.

SPP Recent Accomplishments (Fact Sheet)

 US Department of Commerce, 1401 Constitution Avenue, NW, Washington, DC 20230
Last Updated: May 14, 2007 12:02 PM

Contact Secretary Gutierrez by e-mail at cgutierrez@doc.gov.
Direct inquiries about this page to webmaster@doc.gov.

EXHIBIT 3

 

COUNCIL OF THE Americas

# Official Launch of the North American Competitiveness Council (NACC)

### Thursday, June 15, 2006
### United States Department of Commerce
### Washington, D.C.

### Post-Ministerial Report

U.S. Commerce Secretary Carlos Gutierrez, Mexican Economy Minister Sergio Garcia de Alba and Canadian Minister of Industry Maxime Bernier met on June 15 with North American business leaders to officially launch the North American Competitiveness Council (NACC). Following is an unofficial report of the meeting, action items, and dates to focus on as we move forward.

### Key Points by Principal Speakers

Secretary Gutierrez:

- The purpose of this meeting was to institutionalize the North American Security and Prosperity Partnership (SPP) and the NACC, so that the work will continue through changes in administrations.
- The purpose of governments is to create the environment necessary for business to prosper. Thus far NAFTA has worked well, but it can work better – the NACC will help in that endeavor and the governments look to the private sector to tell them what needs to be done.
- In order to work together, the three countries must respect each others sovereignty, but also harmonize regulations and laws when necessary. If regulations and laws cannot be harmonized, they should at a minimum be compatible.

- Further harmonizing NAFTA will help us compete with other regions around the world, namely Asia and the European Union.
- By becoming more competitive we will create more jobs and opportunities for our country's citizens, making North America the best place to do business.
- From the more than 300 SPP priorities, the governments look to the private sector to "trim them down" to a manageable number so that tangible results can be achieved.
- Representatives from the three governments will get together again for an NACC Ministerial meeting in late September or early October to discuss the private sector's suggestions.

Secretary Garcia de Alba:

- NAFTA has been a great success from the Mexican point of view and has created new jobs, primarily by small and medium size enterprises (SME).
- NAFTA is also directly connected to regional development. Before 1994, a majority of Mexico's exports were primary products – now Mexico is home to 220 business incubators for new technologies.
- Twelve years ago, the key issue was market access. Now the question is: how do we increase competitiveness across all NAFTA partners?
- Mexico's private sector representation at the meeting shows their commitment to the NACC process and to making NAFTA competitive.
- The governments look forward to a robust relationship with the private sector and look forward to their recommendations and suggestions. It will be a great challenge, but we will succeed if we work together.

Minister Bernier:

- The governments need the help of the private sector to solve the "bottlenecks" that have been created by laws and regulations; and thus make NAFTA more competitive.
- Together the private sectors and governments of all three countries can work to create more jobs and provide for their citizens.

The government representatives then turned the meeting over to the private sector representatives to get their views on the NACC.

EXHIBIT 4



COUNCIL OF THE 

# Launch of the U.S. Section of the North American Competitiveness Council (NACC)

## with Secretary of Commerce Carlos Gutierrez

*Friday, May 26, 2006*
*U.S. Chamber of Commerce*

### Participant List

**Ted Allen**
*Lasa Monroig & Veve, LLP*

**Irwin Altschuler**
*Greenberg Traurig*

**Angelo Amador**
*U.S. Chamber of Commerce*

**Tres Bailey**
*Wal-Mart Federal Government Relations*

**Mike Blevins**
*Gas Appliance Manufacturers Association*

**David Brener**
*U.S. Department of Commerce*

**Brett Brenner**
*Electrical Safety Foundation International*

**Jeanne Broad**
*General Motors Corporation*

**Lawrence Bruser**
*Mitsui & Co.(USA), Inc.*

**Merryl Burpoe**
*Aria Strategies*

**Rob Calia**
*U.S. Chamber of Commerce*

**Megan Carpentier**
*C&M International*

**Richard Carret**
*American Chamber of Commerce of Canada*

**Martiza Castro**
*Sandler & Travis Trade Advisory Services, Inc.*

**Ron Covais**
*Lockheed Martin*

**Nelson Cunningham**
*Kissinger, McLarty and Associates*

**Thomas Danjczek**
*Steel Manufacturers Association*

**Aron Davidson**
*U.S. Department of Commerce*

Donald deKieffer
*dekieffer and Hogan*

Michael Dendas
*U.S. Chamber of Commerce*

Randolph Dove
*EDS*

Livia Drumheller
*Denny Murray and Associates*

Stuart Dye
*Holland & Knight LLP*

Caryn Dyson
*Accenture*

David Eaton
*Kansas City Southern*

Eric Farnsworth
*Council of the Americas*

Maria Ferreira
*Schmeltzer, Aptaker & Shepard, P.C.*

Tim Fisher
*MetLife*

Robert C. Fisher
*Hills & Company*

Scotty Greenwood
*Canadian American Business Council*

Leslie Griffin
*New York Life*

Vijai Gupta
*Jyoti Cuisine India*

Jacob Handelsman
*American Forest & Paper Association*

Cathy Harper
*UPS*

Nate Herman
*American Apparel and Footwear Association*

Sarah Hobbard
*Detroit Regional Chamber*

Andrea Howell
*Weyerhaeuser Company*

Jon Huenemann
*Miller & Chevalier Chartered*

Kelly Hunt
*U.S. Chamber of Commerce*

Jose Enrique Idler
*American Enterprise Institute*

Bill Irwin
*Chevron*

Travis Johnson
*International Counterfeiting Coalition*

Caroline Joiner
*U.S. Chamber of Commerce*

Christopher Joyner
*API*

Philip S. Kaplan
*Patton Boggs LLP*

Mark Knouse
*Commission for Labor Cooperation*

Andrew Kreig
*Wireless Communications Association International*

Gary Kushnier
*American National Standards Institute*

Nick Laird
*Alcan Inc.*

Janet Lambert
*Lambert BioConsulting*

Colleen Levine
*National Lumber and Building Material
Dealers Association*

David D. Libenson
*International Hospital Corporation*

Robert H. Lison
*The Boeing Company*

Michelle Lopez
*U.S. Chamber of Commerce*

Meredith Maller
*UPS*

Kate Maloney
*U.S. Trade and Development Agency*

Gary Martin
*North American Export Grain Association*

Dorian Mazurkevich
*U.S. Patent & Trademark Office*

John Meakem
*National Electric Manufacturers
Association*

Barbara Merola
*The Loeffler Group*

Brune Mesguich-Jacquemin
*Embassy of France*

Manuel Micaller
*Tyco International (US), Inc.*

Jennifer Morris
*Canadian American Business Council*

Tom Mouhsian
*U.S. Chamber of Commerce*

John Murphy
*U.S. Chamber of Commerce*

C. Norman Nielsen
*Lockheed Martin Corporation*

David Olave-Delgado
*Eli Lilly & Company*

Mariana Pacheco
*Sandler, Travis & Rosenberg, P.A.*

Ann-Marie Padgett
*Association of Equipment Manufacturers*

Carlos Mateo Paz-Soldan
*Schmeltzer, Aptaker & Shepard, P.C.*

Samuel Peterson
*dekieffer and Hogan*

David Phelps
*American Institute for International Steel*

James Phillips
*Canadian/American Border Trade Alliance*

Susannah Pierce
*TransCanada*

Sarah Pierce
*Canadian American Business Council*

Luis Pinto
*Council of the Americas*

Juan Porras
*International Business-Government
Counsellors*

Tammy Razqoullah
*American Made Alliance*

Linda Recht
*U.S. Department of State*

Liz Reilly
*TradeRoots*

Michelle Reinke
*National Cattlemen's Beef Association*

Del Renigar
*General Electric*

Peggy Rochette
*Food Products Association*

Lars Roden
*Council on Competitiveness*

Marco Rodriguez
*Council on Competitiveness*

Martin Rojas
*American Trucking Association*

Adrean Rothkopf
*U.S. Chamber of Commerce*

Larry Rubin
*American Chamber of Commerce of Mexico*

Christopher Sands
*Center for Strategic and International Studies*

Susan Schmidt
*Manatt Jones Global Strategies*

Andrew Shisko
*Embassy of Canada*

Luis Simpson
*Entertainment Software Association*

Keith Smith
*National Chicken Council*

Mark Smith
*U.S. Chamber of Commerce*

Barry Solarz
*American Iron and Steel Institute*

Nancy Sparks
*FedEx Express*

Gregory Sprow
*U.S. Department of State*

Maria Isabel Studer
*Commission for Labor Cooperation*

David Talbot
*PhRMA*

Christina Tellaliah
*Sony*

Cindy Thomas
*International Trademark Association*

Sarah Thorn
*Grocery Manufacturers Association*

Brian Toohey
*PhRMA*

Timothy Towell
*The Foreign Policy Group*

Ali Tulbah
*Kissinger, McLarty and Associates*

Grey F. Warner
*Merck & Co. Inc.*

Deborah Wince-Smith
*Council on Competitiveness*

Geri Word
*U.S. Department of Commerce*

Bill Worona
*Commission for Labor Cooperation*

Chun Wright
*Entertainment Software Association*

Jennifer Yezak
*National Association of State Departments of Agriculture*

EXHIBIT 5



North American Competitiveness Council
Consejo de Competitividad de América del Norte
Conseil nord-américain de la compétitivité

# *ENHANCING COMPETITIVENESS IN CANADA, MEXICO, AND THE UNITED STATES*

## PRIVATE-SECTOR PRIORITIES
## FOR THE SECURITY AND PROSPERITY PARTNERSHIP
## OF NORTH AMERICA (SPP)

### INITIAL RECOMMENDATIONS OF THE
### NORTH AMERICAN COMPETITIVENESS COUNCIL (NACC)

FEBRUARY 2007                                                    PAGE 1

## APPENDIX III: LIST OF MEMBERS OF THE NACC

### Canada

- **Dominic D'Alessandro**, President and CEO, Manulife Financial
- **Paul Desmarais, Jr.**, Chairman and Co-CEO, Power Corporation of Canada
- **David A. Ganong**, President, Ganong Bros. Limited
- **Richard L. George**, President and CEO, Suncor Energy Inc.
- **E. Hunter Harrison**, President and CEO, Canadian National Railway Company
- **Linda Hasenfratz**, CEO, Linamar Corporation
- **Michael Sabia**, President and CEO, Bell Canada Enterprises (BCE)
- **James A. Shepherd**, President and CEO, Canfor Corporation
- **Annette Verschuren**, President, The Home Depot Canada
- **Richard E. Waugh**, President and CEO, The Bank of Nova Scotia

### Mexico

- **José Luís Barraza**, President, Consejo Coordinador Empresarial (CCE) and CEO of Grupo Impulso, Realiza & Asociados, Inmobiliaria Realiza and Optima
- **Gastón Azcárraga**, President, Consejo Mexicano de Hombres de Negocios (CMHN) and CEO of Mexicana de Aviación and Grupo Posadas
- **León Halkin**, President, Confederación de Cámaras Industriales (CONCAMIN) and Chairman of the Board and CEO of four companies in the industrial and real estate markets
- **Valentín Díez**, President, Consejo Mexicano de Comercio Exterior (COMCE) and former Vicepresident of Grupo Modelo.
- **Jaime Yesaki**, President, Consejo Nacional Agropecuario (CNA) and CEO of several Poultry companies.
- **Claudio X. González**, President, Centro de Estudios Económicos del Sector Privado (CEESP) and Chairman of the Board and CEO Kimberly-Clark de Mexico
- **Guillermo Vogel**, Vice President, TAMSA (Tubos de Acero de México)
- **César de Anda Molina**, President and CEO, Avicar de Occidente
- **Tomás González Sada**, President and CEO, Grupo CYDSA
- **Alfredo Moisés Ceja**, President, Finca Montegrande

*United States*

- **Campbell Soup Company**
- **Chevron Corporation**
- **Ford Motor Company**
- **FedEx Corporation**
- **General Electric Company**
- **General Motors Corp.**
- **Kansas City Southern**
- **Lockheed Martin Corporation**
- **Merck & Co., Inc.**
- **Mittal Steel USA**
- **New York Life Insurance Company**
- **The Procter & Gamble Company** (joined in 2007)
- **UPS**
- **Wal-Mart Stores, Inc.**
- **Whirlpool Corporation**

EXHIBIT 6

| NACC SECRETARIATS |
| --- |

The governments of Canada, Mexico and the United States designated organizations in each of their countries to serve as Secretariats for the North American Competitiveness Council (NACC) and to help collect input from the private sector.

- The **Canadian Council of Chief Executives** (CCCE) is Canada's premier business association, with an outstanding record of achievement in matching entrepreneurial initiative with sound public policy choices. Our member CEOs and entrepreneurs represent all sectors of the Canadian economy. The companies they lead collectively administer CAD$3.2 trillion in assets, have annual revenues in excess of CAD$750 billion, and are responsible for the vast majority of Canada's exports, investment, research and development, and training.

- The **Instituto Mexicano para la Competitividad** (IMCO) is a private applied research center devoted to studying issues that affect Mexico's competitiveness in a context of an open market economy. IMCO is a not-for-profit, independent, non-partisan institution which operates thanks to private sponsors grants. Founded in 2003, the Institute seeks to compete successfully in the "market of ideas" by preparing and issuing sound proposals for public policies based on objective approaches to systematically improve Mexico's ability to attract and retain investments.

- The **Council of the Americas** and the **U.S. Chamber of Commerce** jointly serve as the Secretariat of the U.S. Section of the NACC.

  The **Council of the Americas** is a business organization whose members share a commitment to democracy, open markets, and the rule of law throughout the Americas. The Council of the Americas' programming and advocacy aim to inform, encourage, and promote free and integrated markets for the benefit of the companies that comprise our membership, as well as of the United States and all the people of the Americas. The Council supports these policies in the belief that they provide an effective means of achieving the economic growth and prosperity on which the business interests of its members depend.

  The **U.S. Chamber of Commerce** is the world's largest business federation representing more than 3 million businesses of all sizes, sectors, and regions. It includes hundreds of associations, thousands of local chambers, and more than 100 American Chambers of Commerce in 91 countries.

EXHIBIT 7

U.S. Chamber of Commerce Press Release

**Tuesday, August 15, 2006**

## Chamber Hosts North American Competitiveness Council

WASHINGTON, DC—The U.S. Chamber of Commerce today hosted senior business leaders from across the U.S., Canada, and Mexico under the newly launched North American Competitiveness Council (NACC) to devise strategies to give North American workers and companies an edge in the world economy.

"In a rapidly globalizing world, North America needs to pull together to get ahead," said John Murphy, the Chamber's vice president for international affairs. "Through the North American Competitiveness Council, business is bringing a laser-like focus to the policies that promise great jobs, rising incomes, and shared prosperity."

In March, President George W. Bush, Canadian Prime Minister Stephen Harper, and Mexican President Vicente Fox announced the creation of the NACC at a summit in Cancún, Mexico. The U.S. Chamber coordinates the U.S. Section of the NACC.

The U.S. companies participating in the NACC have already issued extensive recommendations for enhanced North American cooperation on border security, customs reform, regulatory cooperation, energy integration, and policies to spur innovation. Hundreds of companies and industry associations have participated to date.

The U.S. members of the NACC will work with their peers from Canada and Mexico to hammer out consensus recommendations for policies to enhance North American competitiveness.

The U.S. Chamber of Commerce is the world's largest business federation, representing more than 3 million businesses and organizations of every size, sector, and region.

www.uschamber.com

EXHIBIT 8



# NACC

North American Competitiveness Council
Consejo de Competitividad de América del Norte
Conseil nord-américain de la compétitivité

**OTTAWA, CANADA**
**EMBARGOED UNTIL 1 PM EST**
**FEBRUARY 23, 2007**

*TRILATERAL BUSINESS COUNCIL CHARTS COURSE*
*FOR ENHANCED NORTH AMERICAN COMPETITIVENESS*

A trilateral Council of business leaders representing the private sectors of Canada, Mexico, and the United States today put forward more than 50 concrete recommendations designed to strengthen North American competitiveness in global markets while improving public safety and security.

The recommendations, contained in the report titled *Enhancing Competitiveness in Canada, Mexico, and the United States,* were presented this morning in Ottawa to nine senior Cabinet ministers and secretaries:

- From the United States, Secretary of State Condoleezza Rice, Secretary of Commerce Carlos M. Gutierrez, and Secretary of Homeland Security Michael Chertoff

- From Canada, Foreign Affairs Minister Peter MacKay, Public Safety Minister Stockwell Day, and Industry Minister Maxime Bernier

- From Mexico, Foreign Affairs Minister Patricia Espinosa Cantellano, Economy Minister Eduardo Sojo Garza-Aldape, and Interior Minister Francisco Ramírez Acuña

The report is the product of nine months of consultations and deliberations by members of the North American Competitiveness Council (NACC). The NACC's recommendations focus on three priority areas:

- Border-crossing facilitation (23 recommendations)
- Standards and regulatory cooperation (18 recommendations)
- Energy supply and distribution (10 recommendations)






**NORTH AMERICAN COMPETITIVENESS COUNCIL**
**FEBRUARY 23, 2007**
**PAGE 2**

"The NACC simply sees huge potential for greater cooperation—in managing borders, regulation, energy, and many other issues affecting the quality of life of the citizens of Canada, Mexico, and the United States, from responses to emergencies and pandemics to the environment and education," the report emphasizes.

## Background

The leaders of Canada, Mexico and the United States launched the Security and Prosperity Partnership of North America (SPP) in 2005 to ensure that all three countries are safer and better places to live and do business. At their summit in Cancún, Mexico, in 2006, the leaders agreed that greater input from the private sector (the driving force behind innovation and growth) would help the three governments enhance North American competitiveness through the SPP.

The NACC is composed of 10 business leaders from each of the three countries, who represent their respective private sectors. Today's report reflects the input of hundreds of companies, sectoral associations, and local chambers of commerce throughout the three countries.

## Highlights of the February 23rd NACC Report

### Border-crossing facilitation:

The section on border-crossing facilitation makes recommendations for action in the following areas: emergency management and post-incident resumption of commerce; expansion and improvements to border infrastructure; the movement of goods; and the movement of people. These recommendations are focused on actions that could be taken to make concrete improvements to the efficiency of commercial exchanges within North America.

### Standards and regulatory cooperation:

In the area of standards and regulatory cooperation, the report supports the intention of governments to work toward a framework for trilateral regulatory cooperation in 2007, an essential tool for ensuring the compatibility of new regulations while reducing unnecessary differences in existing rules and standards. The report also emphasizes the need for regulators and businesses alike to engage actively in the development of global technical standards. It makes recommendations for specific actions in the short term in three sectors—food and agriculture, financial services, and transportation—as well as for enhanced cooperation in the protection of intellectual property rights.

**NORTH AMERICAN COMPETITIVENESS COUNCIL**
**FEBRUARY 23, 2007**
**PAGE 3**

**Energy Supply and Distribution:**

To enhance the security of energy supply, the report recommends measures to improve cross-border distribution systems, as well as further efforts to increase the supply of skilled labour in the energy field and joint development of clean and efficient energy technologies. The report also includes recommendations that could help Mexico accelerate the development of its energy resources, recognizing the exclusive role of Mexico's public and private sectors to lead initiatives that would increase Mexican competitiveness in this strategic sector.

**Timeframes for Action:**

In each of the above three areas, the NACC puts forward what it suggests are realistic timeframes for accomplishing results, dividing recommendations into those that can be accomplished immediately, those that can be accomplished before the end of 2008, and those that will require somewhat longer time to address, with a goal of completion by 2010.

- 30-

For more information, please contact:

Ross Laver
Canadian Council of Chief Executives
+1 613 238-3727

Martiña Gago
Council of the Americas
+ 1 212 277-8384

John Murphy
U.S. Chamber of Commerce
+ 1 202 550 0329

Armando Chacón Villar
Instituto Mexicano para la Competitividad
+ 55 5980 1017, Ext. 105

EXHIBIT 9



**FOR IMMEDIATE RELEASE**
Friday, February 23, 2007

**CONTACT OFFICE OF PUBLIC AFFAIRS**
(202) 482-4883

## Statement by Ministers Responsibility for the Security and Prosperity Partnership of North America

**Ottawa -** The Leaders of Canada, Mexico and the United States launched the Security and Prosperity Partnership of North America (SPP) to increase security, prosperity, and improve the quality of life for the citizens of each sovereign nation. Last March in Cancun, Leaders reaffirmed their commitment to the SPP and identified five priorities: 1) Strengthening Competitiveness through creation of a private sector-led North American Competitiveness Council (NACC), and enhancing regulatory cooperation; 2) Emergency Management; 3) Avian and Pandemic Influenza; 4) Energy Security; and 5) Smart, Secure Borders.

We, the Canadian and United States Ministers responsible for Foreign Affairs, Security and Prosperity, are pleased to welcome our counterparts from the new Government of Mexico. We met today to review progress since the Leaders' meeting in Cancun and are pleased to report that progress has been achieved in a number of areas.

In order to ensure tangible results on the Cancun priorities:

• We requested that the trilateral regulatory cooperation framework meant to enhance competitiveness, while maintaining high standards of health and safety be finalized by the next Leaders' Summit.

• We directed the members of the Coordinating Body to finalize the North American Plan on Avian and Pandemic Influenza by June 2007.

• We established a senior level coordinating body to prioritize and oversee emergency management activities in the following areas: 1) emergency response, 2) critical infrastructure protection; 3) border resumption in the event of an emergency; and 4) border incident management.

• We welcomed the progress achieved to date on the Smart, Secure Border agenda, and called upon officials to develop additional recommendations for Leaders in this area.

• We took note of the progress achieved by Energy Ministers in implementing priorities identified by Leaders in the areas of innovation, energy efficiency and technology development, and energy market facilitation, and look forward to further progress in advance of the Leaders' meeting.

For the next Report to Leaders, we have tasked SPP working groups and coordinators with revitalizing and streamlining their work plans to ensure that initiatives are more focussed and results-oriented. We discussed the importance of transparency and communication with stakeholders and the public, and directed officials to expand their efforts in this regard. We also asked officials to pursue greater coordination amongst various working groups and initiatives in recognition that many issues cut across security

and prosperity.

We thank the representatives of Canada, Mexico and the United States of the NACC for their dedication and commitment, and for their report on enhancing competitiveness. We note their recommendations in the areas of border crossing facilitation, standards and regulatory cooperation, and energy integration. Our respective governments will review the report and consider carefully its recommendations in preparation for the next Leaders' meeting. We will continue to work with the NACC and other stakeholders as we strive to make North America the safest and best place to live, invest and prosper.

Building on our strong partnership, we recognize the importance of focussing on initiatives that will further competitiveness and quality of life in North America, and will continue to work together to successfully meet the security and prosperity challenges of the 21 st century. We will pursue this work to deliver tangible results and a focussed agenda to the Leaders at their next meeting in August 2007, in Canada.

US Department of Commerce, 1401 Constitution Avenue, NW, Washington, DC 20230
Last Updated: May 14, 2007 12:02 PM

Contact Secretary Gutierrez by e-mail at cgutierrez@doc.gov.
Direct inquiries about this page to webmaster@doc.gov.

EXHIBIT 10



# Judicial Watch

*Because no one is above the law!*

March 23, 2007

**BY FEDEX & FAX (202-463-3114)**
Mr. John Murphy
Vice President for International Trade
U.S. Chamber of Commerce
1615 H Street, NW
Washington, DC 20062-2000

<u>Re:  **North American Competitiveness Council**</u>

Dear Mr. Murphy:

Judicial Watch is a conservative, non-partisan educational foundation, promoting transparency, accountability and integrity in government, politics and the law.  Judicial Watch fulfills its educational mission through litigation, investigations, and public outreach.

We are examining the organization and operations of the Security and Prosperity Partnership of North America (SPP).  Proponents of the partnership claim its purpose is to increase security and prosperity for all three nations through enhanced cooperation.  Critics maintain the partnership will sacrifice U.S. sovereignty by establishing a "North American Union," with open borders and a common currency.  Judicial Watch is calling for complete transparency and disclosure concerning SPP.  Under the provisions of the Freedom of Information Act (FOIA) we have obtained US government records on the subject and made them available to the public on our Internet website at: http://www.judicialwatch.org/SPP.shtml

In conducting additional research on the subject of the North American Competitiveness Council (NACC), we came across a February 23, 2007 press release titled, "Trilateral Business Council Charts Course for Enhanced North American Competitiveness," listing you as a contact.  The referring page from the US Chamber of Commerce Internet website describing the NACC states:

> This is a very open and transparent process.  Literally
> hundreds of companies, sectoral associations, and local

---

501 School Street, SW  ·  Suite 725  ·  Washington, DC 20024  ·  Tel: (202) 646-5172  ·  Fax: (202) 646-5199

Mr. John Murphy
Vice President for International Trade
U.S. Chamber of Commerce
March 23, 2007
Page 2 of 2

chambers of commerce have helped prepare our
recommendations.  No one has ever been turned away.[1]

Judicial Watch wishes to participate in all future meeting of the NACC, to include
Ministerial, Executive Committee and Advisory Committee meetings.  We understand
that the US Chamber of Commerce serves (jointly with the Council of the Americas) as
the Secretariat for the NACC.  Kindly refer our request for participation to the
Secretariat.  Also, please have the Secretariat notify us of the details for the next meeting
of the NACC.  For planning purposes, our representative to the NACC will be our
Director of Research, Christopher J. Farrell.  Mr. Farrell can be contacted at our business
address, by telephone: 202-646-5172, or via e-mail at: cfarrell@judicialwatch.org.

Thank you for your cooperation in this important matter.

Sincerely,

Thomas Fitton
President

---

[1] See: http://www.uschamber.com/issues/index/international/nacc.htm#documents

EXHIBIT 11

**U.S. Chamber of Commerce**

1615 H Street, N.W.
Washington, D.C. 20062-2000
telephone: (202) 463-5485
fax: (202) 463-3126

**John Murphy**
Vice President, International Affairs

April 19, 2007

Mr. Thomas Fitton
President
Judicial Watch
501 School Street, NW
Suite 500
Washington, DC 20024

Dear Mr. Fitton,

Thank you for your recent letter and for your interest in the North American Competitiveness Council (NACC) and our efforts to ensure that the three countries of North America are the safest and best place to live and do business.

As you know, the Security and Prosperity Partnership of North America (SPP) was launched in March 2005 as an effort to increase security and enhance prosperity among the United States, Canada and Mexico through greater cooperation. Recognizing that our three great nations are bound by a shared belief in freedom, economic opportunity, and strong democratic institutions, it includes security and prosperity programs to keep our borders closed to terrorism yet open to trade. For further information about the SPP, we encourage you to visit www.spp.gov or contact U.S. officials at the U.S. Department of Commerce, the U.S. Department of Homeland Security, the U.S. Department of State, or the National Security Council directly.

Recognizing that the business community's participation is a key element to enhancing North America's competitive position in global markets and is a driving force behind innovation and growth, the Leaders of the United States, Canada, and Mexico encouraged the creation of the NACC in March 2006. The NACC provides a voice for the business community on these issues. After more than nine months of wide consultations and deliberations, on February 23, 2007, the NACC put forward more than 50 concrete recommendations to our three governments in the areas of border crossing facilitation, standards and regulatory cooperation, and energy supply and distribution. The full document is available on the websites of the U.S. Chamber of Commerce (www.uschamber.com) and the Council of the Americas (www.as-coa.org).

As requested by the three governments, the NACC is comprised of 30 members from the business community with equal representation from each country, and with each country determining its own members and the membership selection process. Each government has also designated organizations in each of their countries to serve as Secretariats and to help collect input from the business community. As you note in your letter, in the United States the U.S. Chamber of Commerce and the Council of the Americas jointly serve as Secretariat.

The U.S. Section is composed of an Executive Committee and an Advisory Committee. The Executive Committee is made up of 15 companies, charged with representing the sector in which their business operates, not simply the interests of their individual company. The Advisory Committee is comprised of more than 200 companies, sectoral associations and local chambers of commerce and they advise the Executive Committee on all issues in an open and participatory process. For more background on the NACC as well as details on the Executive Committee and Advisory Committee members, please visit the websites of the U.S. Chamber of Commerce and the Council of the Americas.

We appreciate your interest in the process and look forward to keeping you informed. To elaborate on who is eligible to participate in the Ministerial meetings, which are hosted by the governments, you must be an invited official and a member of the Executive Committee of the NACC (although details on the meetings are available publicly, please see www.commerce.gov/opa/press/Secretary_Gutierrez/2007_Releases/February/23_Gutierrez_S PP_Ottawa_stmnt.htm for information on the latest Ministerial that took place on February 23, 2007 in Ottawa, Canada). In terms of membership in the Executive Committee, by definition this is only open to companies. And as noted in the description that you quote in your letter, the Advisory Committee is only open to companies, sectoral associations, and local chambers of commerce. We invite you to let us know if Judicial Watch meets these criteria.

We are committed to ensuring that this business-led initiative is an open and transparent process. All relevant documents related to the organization of the NACC and the process of providing recommendations are available on the websites of the Secretariat organizations, as well as the official U.S. government website for SPP. We are also happy to answer any additional questions you might have.

Sincerely,

John Murphy
Vice President, International Affairs

EXHIBIT 12



July 26, 2007

Honorable Carlos M. Gutierrez
Secretary of the U.S. Department of Commerce
1401 Constitution Avenue, N.W., Room 5516
Washington, D.C. 20230

Re:    **North American Competitiveness Council**

Dear Secretary Gutierrez:

Judicial Watch is a not-for-profit educational organization that seeks to promote transparency, integrity, and accountability in government and fidelity to the rule of law. In furtherance of its public interest mission, Judicial Watch regularly utilizes open records and open meetings statutes, including the Freedom of Information Act ("FOIA") and the Federal Advisory Committee Act ("FACA"), to monitor the actions of federal, state, and local government agencies, entities, and offices. Judicial Watch disseminates its findings to the public through various educational and outreach programs, including the organization's website and monthly newsletter.

As you may recall, the North American Competitiveness Council ("NACC") was officially launched by you and your counterparts from Mexico and Canada in June of 2006. As described in a U.S. Department of Commerce press release issued on June 15, 2006, the NACC "is made up of high level business leaders from each county" who will meet annually with officials and minsters from the U.S., Mexican, and Canadian governments "to provide recommendations and priorities on promoting North American Competitiveness globally."

It is our understanding that the NACC formally met for the first time on August 15, 2006 in Washington, D.C. It also is our understanding that the NACC met with you and your counterparts from Mexico and Canada on February 23, 2007 in Ottawa, Canada and that, at that meeting, the NACC provided over fifty (50) recommendations to you and your counterparts from Mexico and Canada regarding border-crossing facilitation, standards and regulatory cooperation, and energy integration.

Honorable Carlos M. Gutierrez
July 26, 2007
Page 2

Judicial Watch respectfully submits that the NACC and its U.S. component subcommittees, including the Executive Committee and the Advisory Committee, are "advisory committees" as that term is defined under FACA. *See* 5 U.S.C. App. 2 § 3(2). As such, the NACC and its U.S. component subcommittees must comply with all the provisions of FACA, including, but not limited to, filing a charter, publishing timely notice of each meeting in the Federal Register, allowing interested parties to attend and participate in meetings, and providing access to committee records. *See* 5 U.S.C. App. 2 § 10. To the best of our knowledge, neither the NACC nor its U.S. component subcommittees have satisfied any of these statutory requirements.

To further its public interest mission, Judicial Watch seeks to attend and/or participate in meetings of the NACC and its U.S. component subcommittees. Judicial Watch previously submitted a request to this effect to the organization designated by the U.S. Department of Commerce as the "Secretariat" of NACC, the U.S. Chamber of Commerce (serves jointly with the Council of the Americas). The Secretariat informed Judicial Watch that, as a not-for-profit educational organization, it was not eligible to participate in these meetings.

Accordingly, Judicial Watch respectfully requests that you acknowledge that the NACC and its U.S. component subcommittees are advisory committees under FACA and that you bring their operations into compliance with all appropriate laws and regulations. In particular, Judicial Watch understands that the NACC will be meeting in late August 2007 in Montebello, Canada in conjunction with meetings by President Bush, Mexican President Felipe Calderon, and Canadian Prime Minister Stephen Harper. Judicial Watch would like to attend and/or participate in any meeting of the NACC. Due to the brief time remaining before the meeting, please have your office confirm no later than Friday, August 3, 2007 that any such meeting will be open to Judicial Watch and the general public.

Finally, and as you may be aware, FACA requires that all "records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agendas, or other documents which were made available to or prepared by" an advisory committee be made available to the public through FOIA. 5 U.S.C. App. 2 § 10(b). Judicial Watch respectfully requests that you make all such records of the NACC and its U.S. component subcommittees available to Judicial Watch pursuant to the provisions of FOIA.

Thank you for your attention to this matter.

Honorable Carlos M. Gutierrez
July 26, 2007
Page 3

Sincerely,

JUDICIAL WATCH, INC.

Christopher J. Farrell
Director of Research and Investigations

cc:    Hon. David S. Bohigian
       John J. Sullivan, Esq.
       Inspector General Johnnie E. Frazier
       Congressman Duncan Hunter
       Congressman Walter Jones
       Congressman Tom Tancredo
       Senator Jeff Sessions
       Senator Jim DeMint
       Senator Tom Coburn, M.D.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JUDICIAL WATCH, INC.               )
501 School Street, SW, Suite 500     )
Washington, D.C.  20024,          )
                                )
           Plaintiff,          )
                                )
v.                              )     Civil Action No.
                                )
U.S. DEPARTMENT OF COMMERCE,  )
14th Street and Constitution Avenue, N.W. )
Washington, D.C.  20230,          )
                                )
and                           )
                                )
CARLOS GUTIERREZ, in his official capacity as )
Secretary of the U.S. Department of Commerce, )
14th Street and Constitution Avenue, N.W. )
Washington, D.C.  20230,          )
                                )
           Defendants.       )
_____)

**[PROPOSED] ORDER**

Upon consideration of Plaintiff's Motion for a Temporary Restraining Order and a

Preliminary Injunction, and the entire record herein, it is on this ____ day of August, 2007,

**ORDERED** that for a period of ten (10) days from the issuance of this Order, good cause

having been shown pursuant to Rule 65 of the Federal Rules of Civil Procedure that immediate

and irreparable injury and harm will result to Plaintiff before the Application for a Preliminary

Injunction can be heard and decided, that Plaintiff's Application for a Temporary Restraining

Order is **GRANTED**; and it is

**FURTHER ORDERED** that Defendants U.S. Department of Commerce and Secretary

of Commerce Carlos Gutierrez, their agents, servants, employees, successors and assigns, and all those in active concert or participation with them be and hereby are, for a period of ten (10) days from the entry of this Order, enjoined and restrained from closing to Plaintiff or the public the meeting of the North American Competitiveness Council, or any of its U.S. component subcommittees, in Montebello, Canada, on or about August 20-21, 2007; and it is

      **FURTHER ORDERED** that Defendants' answering papers, if any, in opposition to Plaintiff's Motion for Preliminary Injunction shall be filed and served via the Court's electronic case filing system no later than five (5) days from the issuance of this Order, and Plaintiff's reply papers, if any, shall be filed and served via the Court's electronic case filing system no later than eight (8) days from the issuance of this Order; and it is

      **FURTHER ORDERED** that a hearing will be held by this Court on August, ___, 2007, in Courtroom _____, at ___:__ __, at which time Defendants are required to show cause why a preliminary injunction should not issue.

      **SO ORDERED.**

 

                            _____

                            U.S. District Court Judge

Date:   August ___, 2007