# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC. )<br>501 School Street, SW, Suite 500 )<br>Washington, D.C. 20024, )<br>  )<br>Plaintiff, )<br>  )<br>v. )<br>  )<br>U.S. DEPARTMENT OF COMMERCE, )<br>14th Street and Constitution Avenue, N.W. )<br>Washington, D.C. 20230, )<br>  )<br>and )<br>  )<br>CARLOS GUTIERREZ, in his official capacity as )<br>Secretary of the U.S. Department of Commerce, )<br>14th Street and Constitution Avenue, N.W. )<br>Washington, D.C. 20230, )<br>  )<br>Defendants. )<br>_____) | Civil Action No. 07-1446 (PLF) |

### PLAINTIFF'S REPLY IN SUPPORT OF ITS
### APPLICATION FOR A TEMPORARY RESTRAINING
### ORDER AND/OR PRELIMINARY INJUNCTION AND
### <u>REQUEST FOR EXPEDITED HEARING</u>

Plaintiff Judicial Watch, Inc. ("Judicial Watch"), by counsel, submits this reply in support of its pending application for a temporary restraining order and/or preliminary injunction. The purpose of this reply is to provide the Court an overview of key issues in this matter in advance of a hearing on Plaintiff's application.[1]

---

[1] Plaintiff in no way concedes any argument of Defendants not specifically addressed herein.

Contrary to Defendants' assertions, this case does not raise weighty constitutional issues or interfere with U.S. foreign policy. Instead, at issue is the Defendants' attempt to have a closed meeting between agency officials and certain private parties. This is precisely the type of situation that Congress envision would be subject to the Federal Advisory Committee Act ("FACA").

## MEMORANDUM OF LAW

I.  **Plaintiff Is Likely to Succeed on the Merits as Defendants Established and Are Utilizing the NACC**.

Defendants contend that an agency does not "establish" a FACA advisory committee if the agency's involvement with the committee does not rise to the level at which, most importantly, the committee's members are not appointed directly by the government. Defs.' Opp. at 13-14. In support of this proposition, Defendants rely primarily on two decisions of the D.C. Circuit, *Byrd v. EPA*, 174 F.3d 239 (D.C. Cir. 1999) and *Food Chemical News v. Young*, 900 F.2d 328 (D.C. Cir. 1990). Both of these cases are inapposite.

Defendants attempt to rely on a well-recognized exception to FACA under which a contractor retained by a federal agency forms an advisory committee. Both *Byrd* and *Food Chem. News* consider specifically whether a committee created by a contractor is subject to FACA. In both of these cases, the Court concluded that FACA did not apply. This is because, as explained in *Food Chem. News*, it is well-established that the "[FACA] does not apply to persons or organizations which have contractual relationships with Federal agencies." 900 F.2d at 331 (citing H.R. CONF. REP. No. 1403, 92 Cong., 2d Sess. 2, reprinted in USCCAN 3508-09 (also

stating that FACA does not apply to "advisory committees not directly established by or for [Federal] agencies."). As further explained by the Court,

> contractors are unique under FACA as "Congress was no doubt mindful that government contractors, unlike the groups that prompted enactment of FACA . . . are subject to procurement regulations designed, or at least intended, to provide checks against waste and other misuses of government resources. *See, e.g.*, 48 CFR §§ 9.500-505 (providing for identification and resolution of organizational conflicts of interest which may impair a contractor's objectivity in performing contract work).

900 F.2d at 331. As such, Defendants reliance on FACA's contractor exemption is wholly misplaced.

In this case, the NACC was, of course, not created by a contractor. As is apparent from the facts presented in Plaintiff's application, Defendants had a direct and indispensable role in the creation of the NACC. The fact that Defendants did not subsequently appoint individual members in no way diminishes Defendants' role in establishing the NACC.

Finally, Defendants also cite to *People for the Ethical Treatment of Animals v. Barshefsky*, 925 F. Supp. 844 (D.D.C. 1996), in which the Court found that the government had only "indirectly facilitated the formation" of an international working group. While superficially similar to this case, *Barshefsky* is plainly distinguishable as the agency only "indirectly facilitated" the formation of the committee. *Id.* at 848. Here, Defendants played and direct and undisputed role in the establishment of the NACC.

II.    **Defendants Are Clearly Receiving and Relying on Advice and Recommendations from the NACC.**

Defendants assert that the NACC "does not develop specific recommendations on an 'identified governmental policy' exclusively or even primarily for the U.S. federal government." Defs.' Opp. at 16. This is plainly contrary to undisputed facts.

First, however, Defendants try to modify the statute and insert the phrase "exclusively or even primarily" – a phrase that is not part of the statutory definition of "advisory committee." *Id.* Second, to suggest that subjects such as commerce, free trade, border crossings, identification and prosecution of alien smugglers, and port security are not governmental policies is simply implausible. These are the subjects hashed out routinely in Congress – they are clearly matters of governmental policies. *See* Declaration of Walter M. Bastian, attachment 2.

### III.     FACA Does Not Implicate Any Foreign Policy Concerns.

Defendants assert that FACA is not applicable to the "government's dealings with foreign ministries or foreign private entities of the conduct of U.S. officials on foreign soil." Def's Opp. at 18. Putting aside Defendants' assertion that it need not comply with U.S. law when conducting business abroad, Defendants remaining assertions are based on an erroneous reading of FACA. Congress, in drafting and passing FACA, did not make any exceptions for "advisory committees" that may at times involve the government's dealings with foreign private entities. Indeed, any such an exception would make FACA itself moot, as FACA could be avoided in any situation in which an agency chose to meet with its advisory committee outside the U.S.

### IV.     Plaintiff Will Suffer An Irreparable Harm.

Defendants allege that Judicial Watch will not suffer an irreparable harm by being excluded from the upcoming NACC meeting in Montebello. Def's Opp. at 26. Defendants assert that access to some future meetings will make up for Judicial Watch's exclusion from this upcoming meeting. This is simply erroneous. First, Defendants' assertion is contrary to the prior decisions of this Court in *Gates v. Schlesinger*, 366 F. Supp. 797 (D.D.C. 1973) and *Public Citizen v. Nat'l Economic Commission*, 703 F. Supp. 113 (D.D.C. 1989). Neither of those

decisions were contingent upon being "readily resolvable questions" or the availability of future meeting, as Defendants suggest.  Rather, the Court held that the act of being shut out of a particular meeting constituted a permanent loss and irreparable injury.

Defendants have admitted that the NACC will present a report of recommendations at the upcoming meeting.  Def's Opp. at 8, Bastian Decl. ¶ 19.  This is presumably new information not now available to the public.  Additionally, Defendants admit that part of the upcoming meeting will consist of "the delivery of recommendations that have already been developed and finalized." Def's Opp. at 27.  This information, while not new to NACC members or Defendants, would be very informative to Judicial Watch as Defendants have failed to make the complete "records, reports, transcripts, minutes, appendices, working papers, drafts, studies, agendas, and other documents made available to or prepared for or by the advisory committees" of previous meetings available.

### V.     Judicial Watch Clearly Has Standing.

Defendants assert that Judicial Watch lacks standing.  However, Defendants' assertion is belied by the law of this Circuit, including *Byrd v. EPA*, 174 F.3d 239 (D.C. Cir. 1999), a case on which Defendants heavily rely.  In *Bryd*, the Court clearly held that a "refusal to provide information to which on is entitled under FACA constitutes a cognizable injury sufficient to establish Article III standing." *Id.* at 241.  The plaintiff in *Byrd* had been denied "timely access to the panel's written comments and pre-meeting notes," which the Court held to be an "informational injury" caused by the EPA.  The Court further held that the "EPA therefore can make no serious challenge to the injury and causation elements of Byrd's standing." *Id.*

Similarly, the Defendants in this case can make so serious challenge to the injury and causation elements of standing. Defendants have failed to comply with their obligations under FACA. In addition to being denied access to the NACC meetings, Defendants have also failed to make the full records, reports, transcripts, minutes, appendices, working papers available. *See also Food Chemical News v. Dep't of Health and Human Serv's*, 980 F.2d 1468, 1469 (D.C. Cir. 1992) ("materials must be available for public inspection and copying before or on the date of the advisory meeting to which they apply."). These are Defendants obligations and their failures have caused Judicial Watch a cognizable injury.

## Conclusion

For these reasons, Plaintiff respectfully requests that the Court temporarily restrain and/or preliminarily enjoin Defendants from closing to Plaintiff or the public the meeting of the NACC, or any of its U.S. component subcommittees, in Montebello, Canada, on or about August 20-21, 2007.

Dated: August 15, 2007                                      Respectfully submitted,

                                                            JUDICIAL WATCH, INC.


                                                            /s/ James F. Peterson
                                                            James F. Peterson
                                                            D.C. Bar No. 450171
                                                            Meredith L. Di Liberto
                                                            D.C. Bar No. 487733
                                                            Suite 500
                                                            501 School Street, S.W.
                                                            Washington, D.C.  20024
                                                            (202) 646-5172

                                                            *Attorneys for Plaintiff*