**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JUDICIAL WATCH, INC., | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | | |
| v. | : | Civil Action No.: | 07-1446 (RMU) |
| | : | | |
| DEPARTMENT OF COMMERCE, | : | Document No.: | 3 |
| | : | | |
| and | : | | |
| | : | | |
| CARLOS GUTIERREZ, | : | | |
| in his official capacity as Secretary of the | : | | |
| U.S. Department of Commerce | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**DENYING THE PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

**I.    INTRODUCTION**

This case is before the court on the plaintiff's motion for a temporary restraining order

("TRO").  The plaintiff, a not-for-profit organization whose purpose is to promote a transparent

government, asks the court to compel Defendants Department of Commerce and Secretary Carlos

Gutierrez[1] to allow it to attend an upcoming meeting of the North American Competitiveness

Council ("NACC") set to occur in Montebello, Canada (the "Montebello meeting" or "the

meeting").  The plaintiff believes that NACC is governed by the Federal Advisory Committee

Act, 5 U.S.C. App. 2 § 3(2) ("FACA"), and accordingly, NACC's meetings, records and reports

must be made publicly available through the provisions of the Freedom of Information Act, 5

U.S.C. § 552 ("FOIA").  Because the court concludes that the plaintiff fails to demonstrate a

---

[1]    The plaintiff sues Defendant Carlos Gutierrez in his official capacity as the Secretary of
the U.S. Department of Commerce.

substantial likelihood of success on the merits or irreparable injury, the court denies the

plaintiff's motion.

## II.    FACTUAL & PROCEDURAL BACKGROUND

The plaintiff, Judicial Watch, Inc. ("Judicial Watch") is a not-for-profit educational

organization with the purpose of promoting "integrity, transparency, and accountability in

government."  Pl.'s Mot. for TRO ("Pl.'s Mot.") at 7.  To advance its purpose, the plaintiff has

been investigating the activities of the Security and Prosperity Partnership of North America

("SPP") and the NACC since approximately July of 2006.  *Id.* at 6.

At a March 2005 summit of North American leaders, U.S. President George W. Bush,

Mexican President Vincente Fox and Canadian Prime Minister Paul Martin determined to engage

in a cooperative effort to address areas of mutual concern to their respective countries.  *Id* at 2-3.

The result was the Security and Prosperity Partnership of North America ("SPP").  *Id*. at 3.  In

March of 2006, representatives of the three governments, including defendant Guiterrez, met

with senior business leaders for their input on the priorities for the SPP and how the SPP could

facilitate various business goals.  *Id*.  At this meeting, the parties discussed the possible creation

of the NACC.  *Id*.

On June 15, 2006, representatives from each government, again including defendant

Gutierrez, met in Washington, D.C. to officially launch the NACC with the purpose of providing

recommendations on matters of North American competitiveness.  *Id*. at 3-4.  The NACC serves

as a council of "'high level business leaders from each country' who will meet annually with

representatives of the United States, Mexican, and Canadian governments 'to provide

recommendations and priorities on promoting North American competitiveness globally.'" *Id*. at

4. Specifically, the NACC consists of thirty-five members – 15 from the United States, 10 from

Canada and 10 from Mexico – with each country determining its own membership selection

process and selecting its own members. *Id*. The defendants delegated the selection of NACC's

U.S. members to the Council of Americas and the U.S. Chamber of Commerce. *Id*. at 5.

According to the plaintiffs, the NACC has twice met with defendant Gutierrez and his Canadian

and Mexican counterparts: once in Washington, D.C. and once in Ottowa, Canada. *Id*. at 5-6.

The plaintiffs maintain that the NACC is governed by FACA, and that, *inter alia*, its

meetings must be public and its records and reports must be made available through FOIA

requests. *Id*. at 10. Since August of 2006, the plaintiff has made multiple FOIA requests to

various federal agencies, including the defendants, seeking access to records regarding NACC.

*Id* at 6. On March 23, 2007, the plaintiff submitted a request to the U.S. Chamber of Commerce

to participate in NACC meetings. *Id*. at 7. But, the Chamber of Commerce informed the

plaintiff that NACC meetings are only open to invited officials and members of the Executive

committee of the NACC. *Id*. Dissatisfied with that response and believing that the defendants'

actions have violated FACA, the plaintiff brought suit and this motion for a TRO.

### III.    ANALYSIS

**A.    The Court Denies the Plaintiff's Motion for a Temporary Restraining Order**

The plaintiff contends that it is likely to succeed on the merits of its claim that the

existence and operation of the NACC violates FACA. It argues that all NACC functions must be

open to the public and, consequently, the plaintiff will suffer irreparable injury if it is denied

access to the Montebello meeting.[2]  *Id*. at 11-12.  The defendants deny that the NACC is subject

to FACA and maintain that the plaintiff cannot succeed on the merits of its claim that the

Montebello meeting must be open to the plaintiffs.  *Id*. at 10.  The court agrees with the

defendants and concludes that the plaintiff has failed to make a showing sufficient to warrant a

temporary restraining order.

### 1.    Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates:

> (1) a substantial likelihood of success on the merits, (2) that it would suffer
> irreparable injury if the injunction is not granted, (3) that an injunction would not
> substantially injure other interested parties, and (4) that the public interest would be
> furthered by the injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin.*

*Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *see also World Duty*

*Free Americas, Inc. v. Summers*, 94 F. Supp. 2d 61, 64 (D.D.C. 2000).  It is particularly

important for the movant to demonstrate a substantial likelihood of success on the merits.  *Cf.*

---

[2]  The plaintiff seems to conflate two alleged injuries.  In the complaint, the plaintiff argues that its injury results from the defendants' failure to respond to a FOIA request and their general failure to comply with FACA.  Compl. ¶¶ 32, 39.  In this emergency motion, the plaintiff asks the court to "prevent Defendants' from closing to the public and to Plaintiff the upcoming meeting of the NACC scheduled for August 20-21, 2007 in Montebello, Canada."  Pl.'s Mot. for TRO ("Pl.'s Mot.") at 2.  In its reply, however, the plaintiff seems to suggest, reminiscent of the complaint, that its injury also arises from the defendants' failure "to make the full records, reports, transcripts, minutes, appendices, working papers available" to the plaintiff and, presumably, to the public.  Pl.'s Reply at 6.  Because the plaintiff did not raise the FOIA-related allegation of injury in the instant motion, and because the Montebello meeting is the source of the exigency, the court only considers the plaintiff's injury as it relates to the Montebello meeting.  The court notes that, at any rate, the plaintiff's failure to demonstrate that FACA applies to the NACC renders this more general showing of irreparable injury similarly deficient.

*Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam).  Indeed, absent a "substantial

indication" of likely success on the merits, "there would be no justification for the court's

intrusion into the ordinary processes of administration and judicial review."  *Am. Bankers Ass'n*

*v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation

omitted).

Because interim injunctive relief is an extraordinary form of judicial relief, courts should

grant such relief sparingly.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  As the Supreme

Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and

drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the

burden of persuasion."  *Id.* (citation omitted).  Therefore, although the trial court has the

discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly.

*Ambach v. Bell*, 686 F.2d 974, 979 (D.C. Cir. 1982).

   2.   **The Plaintiff Fails to Demonstrate a Substantial Likelihood of Success on the Merits**

   a.   **The Plaintiff has Not Shown that FACA Governs the NACC**

The plaintiff argues that it "very likely" will succeed on the merits of its claims because

the creation and existence of the NACC violates FACA.  Pl.'s Mot. at 9.  Specifically, the

plaintiff alleges that the defendants are violating FACA by "permitting the NACC and its U.S.

component subcommittees to meet and deliberate without complying with FACA's open meeting

and disclosure requirement."  *Id*. at 11.  As the defendants correctly point out, the plaintiff's

argument overlooks an abundance of case law that precludes FACA's application to the existence

or operation of the NACC.

FACA defines the term "advisory committee" to include "any group 'established or utilized' by the President or an agency to give advice on public questions, and requires a covered group to file a charter, afford notice of its meetings, open those meeting to the pubic, and make its minutes, records, and reports available to the public." *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440 (1989). Because "FACA was enacted to cure specific ills – particularly the wasteful expenditure of public funds for worthless committee meetings and biased proposals by special interest groups – it is unlikely that Congress intended the statute to cover every formal and informal consultation between the President or an Executive agency and a group rendering advice." *Id.* at 441. Accordingly, the Supreme Court has "squarely rejected an expansive interpretation of the words, reading 'established' and 'utilized' narrowly to prevent FACA from sweeping more broadly than Congress intended." *Byrd v. U.S. Envt'l Protection Agency*, 174 F.3d 239, 245 (D.C. Cir. 1999) (citing *Public Citizen*, 491 U.S. at 452).

The term "'established' indicates that an advisory panel is actually formed" by the government. *Byrd*, 174 F.3d at 245. The plaintiff claims that Defendant Gutierrez, Canadian Deputy Minister of Industry Suzanne Hurtubise and Dr. Alberto Ortega, a representative of Mexican President Fox, "trilaterally" established the framework for the NACC. Pl.'s Mot. at 3. The Department of Commerce then "worked with the Council of Americas, the U.S. Chamber of Commerce and other interested parties to formalize the NACC by facilitating interactions between representatives from three governments and the private sector." *Id*. The defendants add that the Council of Americas and the U.S. Chamber of Commerce serve as the "Secretariat" for the U.S. component of the NACC, a point the plaintiff concedes, Pl.'s Mot. at 5, and that a

function of the secretariat is to select the members of the U.S. component of the NACC without

the involvement of any U.S. government official.  Defs.' Opp'n at 6.

Despite the plaintiff's conclusory assertion that the defendants "played and directed and

[sic] undisputed role in the establishment of the NACC," Pl.'s Reply at 3, the accepted definition

of "established" does not support the plaintiff's position.  The plaintiff admits that "each country

determines its own membership and the membership selection process [in the NACC]."  *Id*. at 4.

In addition, the U.S. component of the NACC comprises less than half of NACC membership,

Pl.'s Mot. at 4 (stating that the NACC is comprised of thirty-five members: fifteen from the U.S.

component, ten from the Canadian component, and ten from the Mexican component), and U.S.

officials do not select the members of the U.S. component.  The plaintiff points to no evidence

that federal officials had any input whatsoever in the composition of the NACC, beyond the

selection of the Council of Americas and the U.S. Chamber of Commerce as the secretariat.  The

plaintiff has also conceded that "[n]one of NACC's members are full-time officers or employees

of the U.S. government."  Pl.'s Mot. at 4.  Therefore, the court cannot conclude that the plaintiff

has demonstrated the NACC was "established" by the government as required by FACA.  *See*

*People for the Ethical Treatment of Animals, Inc. v. Barshefsky*, 925 F. Supp. 844, 848 (D.D.C.

1996) (concluding that a working group formed by the cooperation of multiple countries, and for

which each party to the group named its own representatives, could not be said to be

"established" by the U.S. government and subject to FACA).

FACA may also apply if the NACC is "utilized" by the government.  The term

"'[u]tilized' encompasses a group organized by a nongovernmental entity but nonetheless so

'closely tied' to an agency as to be amenable to 'strict management by agency officials.'"  *Byrd*,

174 F.3d at 264 (quoting *Wash. Legal Found. v. Sentencing Comm'n*, 17 F.3d 1446, 1451 (D.C.

Cir. 1994)).  The notion of "strict management" contemplates "actual management or control,"

not merely "significant influence" over a committee's deliberations.  *Byrd*, 174 F.3d at 264.

The plaintiff does little to argue that the NACC is "utilized" by the government, other

than to state conclusively that the defendants are utilizing the NACC.  Pl.'s Mot. at 11.  The

plaintiff asserts that, "[a]mong other things, the defendants are permitting the NACC and its U.S.

component subcommittees to meet and deliberate without complying with FACA's"

requirements.  *Id*.  Although it suggests that the defendants "utilize" the NACC by receiving and

relying on its policy advice and recommendations, the plaintiff leaves the court to determine the

nature of the "other things" that constitute the defendants' utilization of the NACC.  Pl.'s Reply

at 4.  Quite simply, nothing on the record suggests that the defendants or any government agency

exercise "actual management or control" over NACC.  *Byrd*, 174 F.3d at 264.  The plaintiff's

representations, therefore, do not convince the court that the NACC is utilized by the defendants.

Accordingly, the court cannot conclude at this juncture that the plaintiff has shown that the

NACC is bound by FACA, and that the plaintiff is substantially likely to succeed on the merits of

its claims.

 b.    **The Plaintiff Fails to Show that a Favorable Ruling Would Redress Its Alleged Injury**

The plaintiff's success on the merits depends not only on showing that the NACC is

governed by FACA.  The plaintiff must, as a jurisdictional prerequisite, demonstrate that it has

standing to bring its claim.  *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996)

(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Assuming *arguendo* that the

plaintiff can establish that it has suffered an injury-in-fact, to succeed on its claims it must still

prove that its injury is fairly traceable to the defendants' actions and that the relief the plaintiff seeks will redress its alleged injury. *Byrd*, 174 F.3d at 243 (citing *Steel Co.*, 523 U.S. at 103). The defendants argue that because the plaintiff seeks to be admitted to a multi-national meeting, a court order directing the defendants to allow the plaintiff access would not necessarily result in its actual admittance to the meeting.

The plaintiff has not adequately explained to the court how either (1) the plaintiff's injury – being prevented from attending the Montebello meeting – is fairly traceable to the defendants' conduct or (2) an order directing the defendants to permit the plaintiff access to the NACC meeting would actually assure the plaintiff's ability to attend the meeting. First, the court will address the "fairly traceable element." For the plaintiff to satisfy this element of standing, it must show that the defendants have prevented the plaintiff's attendance. The Montebello meeting's expected participants will include invited officials, private companies, sectoral associations and local chambers of commerce from three different countries. Pl.'s Mot. at 7. In addition, the U.S. Chamber of Commerce, not the defendants, informed the plaintiff that the meeting is restricted to "invited officials and members of the Executive Committee of the NACC." *Id*. at 7. The plaintiff has presented no evidence, or even argument, that the defendants have any control over the meeting or that they somehow affect attendance. Therefore, the plaintiff has not "bridge[d] the uncertain ground found in any causal path that rests on the independent acts of third parties" sufficient to assure the court that it will succeed on the merits of its claims. *Bentsen*, 94 F.3d at 671 (explaining the necessity of showing that an injury is fairly traceable to the defendants' conduct when challenging an alleged procedural violation by the government).

The plaintiff faces a similar obstacle in demonstrating that its injury is redressable by a favorable order of the court. *See Dynalantic Corp. v. Dep't of Defense*, 115 F.3d 1012, 1017 (D.C. Cir. 1997) (stating that "[t]ypically, redressability and traceability overlap as two sides of a causation coin"). Despite the aforementioned organizations involved in the NACC's formation and the expected participants in the Montebello meeting, the plaintiff names only the U.S. Department of Commerce and its Secretary as defendants in this action. *See* Compl. The plaintiff's failure to demonstrate that the defendants exercise any control over the NACC or the Montebello meeting undermines the redressability argument just as it does the causation element. The court, therefore, cannot conclude that the plaintiff would gain admittance to the meeting as a result of a court order directing the defendants, mere attendees, to make it so. Without this necessary showing, the plaintiff has failed to demonstrate standing. *Nat'l Wrestling Coaches Ass'n v. Dep't. of Educ.*, 366 F. 3d 930, 939 (D.C. Cir. 2004) (concluding that the appellants lacked standing because they had offered nothing to substantiate their allegations that a favorable court ruling would redress their injury).

### 3.     The Plaintiff Fails to Demonstrate Irreparable Injury

The plaintiff's challenge in demonstrating irreparable injury stems from the weaknesses in its likelihood of success on the merits. The plaintiff asserts that absent a court order it will suffer irreparable injury because its "right under FACA to attend and/or participate in the NACC's Montebello meeting will be 'permanently lost.'" Pl.'s Mot. at 12 (quoting *Gates v. Schlesinger*, 366 F. Supp. 797, 801 (D.D.C. 1973)). The defendants maintain that FACA does not apply to the NACC, the plaintiff has no right to attend the meeting, and therefore, the plaintiff necessarily suffers no injury by being excluded from the meeting. The court agrees.

Because the plaintiff fails to show a substantial likelihood of success on the merits, it must make a "very strong" showing of irreparable harm to obtain a TRO. *Sandoz, Inc. v. Food & Drug Admin.*, 2006 WL 1897728, at *3 (D.D.C. July 12, 2006) (quoting *Apotex, Inc., v. Food & Drug Admin.*, 2006 WL 1030151, at *16 (D.D.C. Apr. 19, 2006)). In addition, because the plaintiff seeks a mandatory injunction that would alter the status quo, the plaintiff must demonstrate beyond the familiar 4-part test for injunctive relief, that he is "clearly" entitled to the relief he seeks or "extreme or very serious damage will result."[3] *Farris v. Rice*, 453 F. Supp. 2d 76, 79 (D.D.C. 2006); *see also King v. Leavitt*, 475 F. Supp. 2d 67, 71 (D.D.C. 2007) (quoting *Mylan Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30, 36 (D.D.C. 2000)).

The plaintiff's showing of irreparable harm depends on a showing that the defendants are denying the plaintiff's statutory right to attend the meeting, and as discussed *supra*, the plaintiff has not convinced the court that it has a right to attend the meeting. *See Gulf Oil Corp.*, 514 F. Supp. at 1026 (stating that the determination of injury is one made based upon the facts of each particular case and must be considered along with the probability of success on the merits) (citing *Jacksonville Port Auth. v. Adams*, 556 F.2d 52 (D.C. Cir. 1977)). The plaintiff has not successfully compensated for his failure to demonstrate a likelihood of success on the merits. *Pharm. Research and Mfrs. of Am. v. United States*, 135 F. Supp. 2d 1, 7-8 (D.D.C. 2001) (stating that "[i]f the plaintiff makes a particularly weak showing on one factor . . . the other factors may not be enough to 'compensate' . . . [and it] is particularly important for the plaintiff

---

[3]     The D.C. Circuit has neither adopted nor rejected this rule. *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 834 n.31 (D.C. Cir.1984) (explaining that "[i]n this circuit, however, no case seems to squarely require a heightened showing, and we express no view as to whether a heightened showing should in fact be required").

to demonstrate a substantial likelihood of success on the merits") (internal citations omitted).

Therefore, the court cannot conclude at this time that the plaintiff has made a sufficient showing

of irreparable harm to warrant the extraordinary relief of a TRO.

### 4.    Harm to Other Parties and Public Interest Considerations

The plaintiff argues that the defendants can suffer no harm from an injunction that

prevents them from violating FACA.  Pl.'s Mot. at 12.  In addition, the plaintiff maintains that an

injunction will serve the public interest by forcing the government to follow the law, and it will

prevent violations of statutory rights.  *Id*. at 13.  More generally, the plaintiff states that the

public has an interest in an open and transparent government, including the recommendations

made to the government by advisory committees.  *Id*.  The defendants answer that an injunction

would interfere with the Department of Commerce's interactions with foreign governments as

well as the President's conduct of foreign relations.  Defs.' Opp'n at 30.  They assert that both

they and the public interest will suffer because, "at the very least [an injunction will] lead to

friction in relations among the three states, and in the worst case could interfere with security

arrangements that may have been made for the meeting in light of the presence of high-level

government officials."  *Id*. at 31.

The court recognizes that the defendants' interactions with the foreign governments and

NACC may be damaged by an injunction.  Specifically, were the court to order the defendants to

permit the plaintiff to attend the meeting, the defendants would be forced to assert the court order

contrary to the rules implemented not by the defendants, but by the NACC, permitting only

invited officials, private companies, sectoral associations and local chambers of commerce to

attend the meeting.  Pl.'s Mot. at 7.  In addition, the coordinators and attendees of the Montebello

meeting, none of whom are a party to the action, would be forced to make accommodations for the plaintiff's presence. This is significant harm to impose in an attempt to vindicate a right the plaintiff has not established. The balance of harms, therefore, weighs against issuing a TRO.

The public interest is, no doubt, served by a transparent government. *James v. U.S. Secret Serv.*, 2007 WL 2111034, at *5 (D.C. Cir. Jul. 23, 2007) (explaining that in the context of FOIA, the public has an interest in being "informed about what their government is up to") (internal quotations omitted). But, the plaintiff has not demonstrated that the defendants are violating FACA, or that the plaintiff has a right to attend the Montebello meeting. Thus, the court concludes that the public interest would not be served by the injunction the plaintiff seeks.

## IV.    CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion for a TRO. An order consistent with this Memorandum Opinion was issued on August 16, 2007.

RICARDO M. URBINA
United States District Judge