UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JUDICIAL WATCH, INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 07-1446 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 22 |
| | : | | |
| UNITED STATES DEPARTMENT OF COMMERCE *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANTS' RENEWED MOTION TO DISMISS

## I. INTRODUCTION

This matter is before the court on the defendants' renewed motion to dismiss. The plaintiff, Judicial Watch, Inc. ("Judicial Watch") seeks declaratory and injunctive relief against the U.S. Department of Commerce ("DOC") and DOC Secretary Gary Locke[1] (collectively, the "defendants") based on their alleged noncompliance with the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 2. Because the plaintiff has failed to plead a facially plausible claim for which relief can be granted, the court grants the defendants' motion to dismiss.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the court substitutes the current DOC Secretary, Gary Locke, for Carlos Gutierrez. FED. R. CIV. P. 25(d) (stating that an "officer's successor is automatically substituted as a party" and that "[l]ater proceedings should be in the substituted party's name").

## II. BACKGROUND[2]

### A. The North American Competitiveness Council

In March 2005, leaders from the United States, Canada and Mexico held a summit during which the three nations created the Security and Prosperity Partnership of North America ("SPP") to address matters of mutual concern, such as trade, energy and environmental issues. Compl. ¶ 9. In March 2006, former DOC Secretary Gutierrez and his counterparts from Canada and Mexico met with senior business leaders from the three countries to identify priorities for the SPP and to solicit policy recommendations for improving North American economic competitiveness. *Id.* ¶ 10.

During this meeting, the participants also discussed the creation of the North American Competitiveness Council and its U.S. component subgroups (collectively, the "NACC"). *Id.* Subsequently, Secretary Gutierrez and his counterparts agreed upon a framework for the NACC, which would provide policy recommendations to the three governments for subsequent action through the SPP. *Id.* ¶ 11. This framework envisioned the NACC functioning as a conduit between the defendants, their Canadian and Mexican counterparts and the North American business community. *Id.*

The proposed structure of the NACC was again discussed during a later meeting held in March 2006, between officials from each government and private sector representatives. *Id.* ¶ 12. Following this meeting, DOC officials met with the Council of the Americas and the U.S. Chamber of Commerce to "formalize the NACC by facilitating interaction between

---

[2] For the purposes of ruling on this motion, the court assumes the truth of the plaintiff's allegations. *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 673, 681 (D.C. Cir. 2009) (observing that "[w]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint" (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))).

representatives from the three governments and the private sector." *Id.* ¶ 13. Secretary Gutierrez met with his Canadian and Mexican counterparts in June 2006 to officially launch the NACC. *Id.* ¶ 14.

The NACC is composed of thirty-five members of the North American business community. *Id.* ¶ 15. Canada and Mexico each hold ten NACC seats reserved for representatives from their respective countries, while the United States holds fifteen seats. *Id.* ¶¶ 17-18. Each country separately determines the selection process for appointing its representatives to the NACC and designates organizations to serve as "Secretariats." *Id.* ¶¶ 15, 20. For the U.S. delegation, the DOC selected two "business groups," the Council of the Americas and the U.S. Chamber of Commerce to serve jointly as the U.S. NACC Secretariat. *Id.* ¶ 20. The U.S. NACC Secretariat in turn selects the business organizations that hold seats on the NACC. Pl.'s Opp'n to Defs.' Renewed Mot. to Dismiss ("Pl.'s Opp'n") at 16.

The U.S. component of the NACC consists of an Executive Committee and an Advisory Committee. Compl. ¶ 22. The Executive Committee is comprised of the fifteen U.S. representatives to the NACC, each of which is a large corporation. *Id.* The Advisory Committee consists of over 200 businesses, associations and chambers of commerce that provide advice and policy recommendations to the Executive Committee. *Id.* ¶ 23. The NACC meets with the defendants and their Canadian and Mexican counterparts multiple times each year to propose and discuss policy recommendations on issues such as facilitating border-crossing, regulatory cooperation and energy integration. *Id.* ¶¶ 21, 26.

## B. Statutory Framework

The FACA's purpose is "to enhance the public accountability of advisory committees established by the Executive Branch and to reduce wasteful expenditures" that result only in "worthless committee meetings and biased proposals." *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 453, 459 (1989). Congress intended the FACA to "ensure that new advisory committees be established only when essential[;] . . . that their creation, operation, and duration be subject to uniform standards and procedures; that . . . the public remain apprised of their existence, activities, and cost; and that their work be exclusively advisory in nature." *Id.* at 446. The FACA places obligations on the conduct of advisory committees falling within its ambit. *Id.* at 446-47. For example, the FACA requires, *inter alia*, that advisory committees file a charter, keep minutes of their meetings and file public notices of their meetings. 5 U.S.C. app. 2 §§ 9(c), 10(a)(2), 10(c). Advisory committees subject to FACA must also open their meetings to the public and make their minutes, records and reports publicly available, subject only to certain narrow statutory exceptions not relevant here. *Id.* § 10(a)(3), 10(b), 10(d).

The central dispute between the parties in this case is whether the NACC is an advisory committee subject to the FACA, as defined by the statute and case law. Defs.' Mot. at 9-15; Pl.'s Opp'n at 11-18. The FACA defines advisory committees, in pertinent part, as "any committee . . . established or utilized by one or more [U.S. government] agencies." 5 U.S.C. app. 2 § 3(2). The plaintiff asserts that the DOC established and continues to utilize the NACC, subjecting the NACC to FACA regulations. Compl. ¶¶ 35-47.

## C. Factual & Procedural History

The plaintiff is a non-profit public interest corporation that monitors the actions of government entities and officials at the federal, state and local levels. Compl. ¶ 1. The plaintiff's mission is to promote governmental integrity, transparency, accountability and fidelity to the rule of law. *Id.* To that end, the plaintiff has been investigating the NACC since July 2006. *Id.* ¶ 28. The alleged relationship between the NACC and the DOC underlies the plaintiff's claims of FACA violations. *Id.* ¶¶ 35-47.

The plaintiff began seeking information about the NACC in July 2006 by submitting Freedom of Information Act requests to various federal agencies, including the DOC. *Id.* ¶ 28. Through these requests, the plaintiff sought access to records related to the NACC's creation, activities and meetings. *Id.* The plaintiff also requested permission from the U.S. NACC Secretariat to participate in all future NACC meetings, but in April 2007, the U.S. Chamber of Commerce denied this request. *Id.* ¶¶ 29-30. The plaintiff then sent a letter to the defendants in July 2007 asking them to acknowledge that the FACA applies to the NACC, and that, as a result, public access should be provided to all NACC meetings and records. *Id.* ¶ 31. The defendants had not replied to this letter by August 10, 2007, when the plaintiff commenced this suit seeking declaratory and injunctive relief related to the defendants' alleged violations of the FACA. *Id.* ¶ 32.

This court granted the defendants' initial motion to dismiss on September 19, 2008, holding that the plaintiff had not demonstrated standing. Mem. Op. (Sept. 19, 2008). On appeal, the Circuit reversed and remanded, holding that, for the purposes of deciding a motion to dismiss, the plaintiff had made sufficient factual allegations to assert standing. *Judicial Watch,*

*Inc. v. U.S. Dep't of Commerce*, 583 F.3d 871, 873-74 (D.C. Cir. 2009). Upon remand, the defendants filed this renewed motion to dismiss, which is now fully briefed. *See generally* Defs.' Renewed Mot. to Dismiss ("Defs.' Mot.").

### III. ANALYSIS

#### A. Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-56, instructing

courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556.

In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

### B. The Plaintiff May Bring a Cause of Action for FACA Violations Under the Administrative Procedure Act or the Mandamus Act

As a preliminary matter, the court considers the defendants' argument that the plaintiff's claim is not viable because the FACA does not directly provide for a private right of action, and neither the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500 *et seq.*, nor the Mandamus Act, 28 U.S.C. § 1361, provide an alternative basis for obtaining such relief. Defs.' Mot. at 19.

7

In opposition, the plaintiff argues both all three statues provide a basis for the relief it seeks. Pl.'s Opp'n at 18.

### 1. The FACA Does Not Confer a Private Right of Action

"The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citations omitted). "Statutory intent on this latter point is determinative." *Id*. "Nothing in the language of [the] FACA evidences any intent to create such a remedy." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 219 F. Supp. 2d 20, 33-34 (D.D.C. 2002); *see also Colo. Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1234 (10th Cir. 2004); (stating, without explanation, that the FACA does not contain a private right of action); *Utah Ass'n of Counties v. Bush*, 316 F. Supp. 2d 1172, 1184 (D. Utah 2004) (holding that the FACA does not provide for a private right of action); *cf. Natural Resources Def. Council v. Abraham*, 223 F. Supp. 2d 162, 176 (D.D.C. 2002) (recognizing that the FACA does not create a private right of action and allowing the plaintiff's case to proceed via the APA), *superseded by statute*, 5 U.S.C. app. 2, *as recognized in Natural Resources Def. Council v. Dep't of Energy*, 353 F.3d 40, 41 (D.C. Cir. 2004) (explaining that the case is moot because the committees at issue were statutorily exempt from the FACA). Because the FACA does not explicitly confer a private remedy, *see generally* 5 U.S.C. app. 2, and because this fact alone is "determinative," the court holds that the FACA does not provide the plaintiff with a private right of action. *Sandoval*, 532 U.S. at 286.

## 2. The Plaintiff May Bring Its Claims Pursuant to the APA

The APA grants district courts jurisdiction to review final agency actions for which there is no other adequate remedy. 5 U.S.C. § 704. Here, the plaintiff alleges that the defendants have denied it access to NACC meetings and documents. Compl. ¶ 31, 32. Another court in this district, analyzing under the APA a claim to enforce the same provisions of the FACA at issue here, has observed that "[t]he type of actions and inaction challenged here, [such as] holding meetings, refusing to disclose documents[ and] failure to comply with FACA's other procedural requirements, certainly fall within the . . . definition of agency action." *Nat'l Energy Policy*, 219 F. Supp. 2d at 38. The court also explained that the agency's decisions not to comply "with the various procedural requirements of FACA" had the effect of a final action because they "were not tentative or interlocutory" and "had [the] legal consequence [of] den[ying] . . . the public's right of access to that information." *Id*. at 40. As a result, the court determined that the APA was an appropriate avenue for the plaintiffs to bring their claims alleging FACA violations. *See id*. at 36-40.

Indeed, a number of courts have allowed plaintiffs to proceed with APA actions based on alleged FACA violations. *See, e.g.*, *Idaho Wool Growers Ass'n v. Schafer*, 637 F. Supp. 2d 868, 872 n.3 (D. Idaho 2009) (acknowledging that a plaintiff may bring a claim for FACA violations under the APA); *Int'l Brominated Solvents Ass'n v. Am. Conference of Governmental Indus. Hygienists*, 393 F. Supp. 2d 1362, 1378 (M.D. Ga. 2005) (stating that "[n]othing in the applicable FACA provisions precludes judicial review under the APA"); *Utah Ass'n of Counties*, 316 F. Supp. 2d at 1184 (requiring that a plaintiff complaining of FACA violations do so via the APA); *Natural Resources Def. Council v. Abraham*, 223 F. Supp. 2d at 193 (allowing the

plaintiffs to proceed on their APA claims for FACA violations). This court concurs with the reasoning of these decisions and concludes that the plaintiff may bring its claims pursuant to the APA.

### 3. The Plaintiff May Bring Its Claims Pursuant to the Mandamus Act

The Mandamus Act authorizes district courts to issue mandamus orders compelling federal officials to perform ministerial or non-discretionary duties. 28 U.S.C. § 1361. The court notes that nearly every provision of the FACA that explains the statutory duties of advisory committees, like those at issue here, includes the word "shall," *see, e.g.,* 5 U.S.C. app. 2 § 10(a)(1) (stating "[e]ach advisory committee meeting *shall* be open to the public) (emphasis added); *id*. § 10(b) (requiring that "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee *shall* be available for public inspection") (emphasis added); *id*. § 10(c) (mandating that "[d]etailed minutes of each meeting of each advisory committee *shall* be kept") (emphasis added), indicating that "the language of [the FACA] leaves no room for discretion," *Nat'l Energy Policy*, 219 F. Supp. 2d. at 43. Therefore, such discrete, non-discretionary duties qualify as relief in the nature of mandamus. *See id*. at 43. Accordingly, the court holds that the plaintiff may bring his claim for alleged FACA violations under the Mandamus Act.[3] *Cf. Citizens for Responsibility & Ethics in Wash. v. Exec. Office of the President*, 587 F. Supp. 2d 48, 63 (2008) (denying a motion to dismiss a claim for FACA

---

3  As further support for their position, the defendants also cite a case in which the Circuit directed the district court to dismiss the plaintiff's claims under the Mandamus Act based on alleged FACA violations. Defs.' Mot. at 20 (citing *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005)). *Cheney*, however, does not address the issue of whether a plaintiff may bring a FACA claim under the Mandamus Act. 406 F.3d at 730. Rather, the Circuit affirmed the dismissal of the plaintiff's FACA claims not because relief under the Mandamus Act was unavailable, but rather because the advisory committees in question did not fall under the FACA. *Id.* at 730-31.

violations brought pursuant to the Mandamus Act on the basis that it is not duplicative of the plaintiff's APA claim); *Ctr. for Arms Control & Non-Proliferation v. Lago*, 2006 WL 3328257, at * (D.D.C. Nov. 15, 2006) (analyzing the plaintiff's FACA-based Mandamus Act claim on the merits and dismissing the complaint because the committee at issue did not fall under FACA).

### C. The Plaintiff Fails to Allege that the Defendants Established or Utilized the NACC Within the Meaning of the FACA

The defendants argue that the NACC does not fall under the FACA because the DOC did not "establish" and does not "utilize" the NACC. Defs.' Mot. at 9-15; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply") at 1-6. The plaintiff responds that the FACA applies to the NACC because the DOC "established" the NACC by playing a role in its creation and "utilizes" the NACC by meeting with it regularly to discuss policy recommendations. Pl.'s Opp'n at 11-13.

The NACC is subject to FACA regulations if it was "established" or is "utilized" by the DOC. 5 U.S.C. app. 2 § 3(2). The Supreme Court has stated that Congress did not design the FACA to cover every formal or informal consultation between a government agency and a group rendering advice. *Pub. Citizen*, 491 U.S. at 453. In the Court's view, a straightforward interpretation of the term "utilize" "would catch far more groups and consulting arrangements than Congress could conceivably have intended." *Id.* at 464; *see also id.* at 457-58 (noting that the committee did not receive federal funding and was "not amenable to strict management by agency officials").

Subsequent decisions of this Circuit have further clarified the meaning of the terms "establish" and "utilize" in the context of the FACA. Taken together, these decisions describe three ways in which the government can "establish" or "utilize" an advisory committee so as to subject it to FACA obligations. First, the government "establishes" an advisory committee when

11

the government directly forms it. *Food Chem. News v. Young*, 900 F.2d 328, 332 (D.C. Cir. 1990) (citing *Pub. Citizen*, 491 U.S. at 460-62). Second, the government "utilizes" a privately-formed advisory committee when agency officials exercise actual management or control over that committee. *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1451 (D.C. Cir. 1994). Third, even if a non-government entity forms an advisory committee, that committee will still fall under the FACA if the organization forming it is "quasi-public." *Animal Legal Def. Fund, Inc. v. Shalala*, 104 F.3d 424, 431 (D.C. Cir. 1997). The court reviews the plaintiff's allegations in the context of each of these methods in turn.

### 1. The Plaintiff Fails to Adequately Allege That the DOC Directly Formed the NACC

This Circuit has held that the government does not directly form or "establish" an advisory committee when the agency itself does not select the committee's members. *Byrd v. U.S. Envtl. Prot. Agency*, 174 F.3d 239, 246 (D.C. Cir. 1999) (citing *Food Chem. News*, 900 F.2d at 332). The plaintiff in *Byrd* protested that the Environmental Protection Agency ("EPA") had "effectively created" the committee by "conceiving of the need for it." *Id.* The *Byrd* plaintiff also argued that the EPA retained some authority to select the committee members, and had even provided a list of suggested members to the contractor forming the committee. *Id.* The Circuit remained unpersuaded, however, because the EPA never actually exercised its authority to determine who participated in the committee. *Id.* at 247. In the Circuit's view, anything less than actual selection of advisory committee members is insufficient to constitute direct formation or government establishment within the meaning of the FACA. *Id.* at 246-47.

Here, the plaintiff here alleges that the defendants, working with their Mexican and Canadian counterparts, created the "framework" for the NACC. Compl. ¶ 11. Later, the leaders

of the United States, Mexico and Canada held a series of meetings during which they allegedly discussed the proposed structure of the NACC. *Id.* ¶ 12. Next, the plaintiff states that the defendants worked with the Council of the Americas, the U.S. Chamber of Commerce and other interested parties "to formalize the NACC by facilitating interaction between representatives from the three governments and the private sector." *Id.* ¶ 13. The plaintiff also asserts that former Secretary Gutierrez met with his counterparts and North American business leaders to "officially launch" the NACC and that each country represented in the NACC "determines its own members and the membership selection process." *Id.* ¶¶ 14, 15. Lastly, the plaintiff alleges that the defendants designated the Council of the Americas and the U.S. Chamber of Commerce to serve as the U.S. Secretariat with respect to the NACC, *id.* ¶ 20, and, in turn, the U.S. Secretariat selects the U.S. representatives to the NACC, Pl.'s Opp'n at 16.

These allegations do not support the contention that the DOC directly formed the NACC as the plaintiff does not allege that the DOC or any other U.S. government agency selects the U.S. representatives to the NACC. *See generally* Compl.; Pl.'s Opp'n. Accordingly, the court holds that the plaintiff has not adequately alleged that the defendants directly formed or "established" the NACC.[4] *Byrd*, 174 F.3d at 246-47; *see also Food Chem. News*, 900 F.2d at

---

[4] The plaintiff argues that U.S. General Services Administration ("GSA") guidelines on when the FACA applies lend support to its position that the DOC directly formed the NACC. Pl.'s Opp'n at 17. The GSA is the federal agency that administers the FACA. *Id.* The plaintiff points to a hypothetical scenario described in a GSA publication in which the GSA declares that the FACA applies to a committee convened by a government administrator and made up of senior corporate officials who confer and advise a government agency. *Id.*; Pl.'s Opp'n, Ex. A at 2. Although the court may not look to documents outside of the pleadings in resolving a motion to dismiss, FED. R. CIV. P. 12(d), the court notes that doing so here would not affect the outcome of the case because the GSA publication also states that the FACA applies in that scenario due to the fact that "the committee is established by an agency head." Pl.'s Opp'n, Ex. A at 2. The GSA publication incorporates the term "establish" from the FACA statute, *id.*, and as already discussed, this Circuit has defined that term in its decisions in a manner inconsistent with the plaintiff's allegations. *See*, *Byrd v. U.S. Envtl. Prot. Agency*, 174 F.3d 239, 246 (D.C. Cir. 1999).

333 (holding that the FACA did not cover a committee whose members had not been selected by the government)[5]; *People for Ethical Treatment of Animals, Inc. v. Barshefsky*, 925 F. Supp. 844, 847-48 (D.D.C. 1996) (denying the plaintiff's motion for an injunction, holding that the plaintiff had not demonstrated a likelihood of success on the merits because fact that the government named some of the committee members and provided the committee with partial funding "does not rise to the level necessary . . . to conclude that the [government] 'directly established' the [committee]").

### 2. The Plaintiff Fails to Adequately Allege That the Defendants Exercise Actual Management or Control Over the NACC

This Circuit has held that the government "utilizes" an advisory committee only when it exercises "something along the lines of actual management or control" over that committee. *Wash. Legal Found.*, 17 F.3d at 1450; *see also Food Chem. News*, 900 F.2d at 332-33 (stating that the term "utilized" "encompasses a group organized by a nongovernmental entity but nonetheless so closely tied to an agency as to be amenable to strict management by agency officials[]") (internal quotations omitted). Even "significant influence" over a committee does

---

Moreover, even if the GSA publication did contradict Circuit's precedent, courts need not defer to the GSA's interpretations of the FACA because the GSA's "interpretive regulations [were] not promulgated pursuant to express statutory authority" from Congress. *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 463 n.12 (1989).

5 The plaintiff contends that the courts in both *Food Chemical News* and *Byrd* decided that the FACA did not apply because of a statutory exception that excludes federal contractors from obligations under the FACA. Pl.'s Opp'n at 15. This assertion, however, reflects a misunderstanding of both cases. Although the facts underlying both cases involved federal contractors, neither plaintiff alleged that the FACA applied to those contractors. *See Food Chem. News*, 900 F.2d at 331; *Byrd*, 174 F.3d at 241-42. In addition, the holdings in both cases rested on the explicit conclusion that the FACA was inapplicable because the government had not "established" or "utilized" the disputed committees, not on the FACA exception for contractors. *See Food Chem. News*, 900 F.2d at 333; *Byrd*, 174 F.3d at 247-48.

not constitute the degree of control required to qualify as utilization in the FACA context. *Wash. Legal Found.*, 17 F.3d at 1451.

The plaintiff in this case avers that the NACC provides policy recommendations to the defendants and acts as a conduit between them and the business community. Compl. ¶ 11. The plaintiff also maintains that the defendants meet frequently with the NACC at the "ministerial" and "working group" levels to discuss policy recommendations. *Id.* at ¶¶ 21-24. The plaintiff does not, however, allege that the defendants exercise any management authority or control over the NACC. *See generally* Compl.; Pl.'s Opp'n. The court therefore holds that the plaintiff has not adequately alleged that the defendants manage or control the NACC and thus do not "utilize" it for FACA purposes. *See Wash. Legal Found.*, 17 F.3d at 1450-51 (determining that a committee was not subject to the FACA because the government did not exercise control over it); *see also Huron Envtl. Activist League v. U.S. Envtl. Prot. Agency*, 917 F. Supp. 34, 42 (D.D.C. 1996) (holding that FACA did not apply to the committee at issue because the defendant did not utilize it by exercising control); *Am. Soc. of Dermatology v. Shalala*, 962 F. Supp. 141, 147 (D.D.C. 1996) (ruling that the government did not exercise control over the committee and therefore did not utilize it under the FACA).

**3. The Plaintiff Does Not Allege That Any Quasi-Public Organization Formed the NACC**

The FACA may also apply to an advisory committee created by a "quasi-public" organization. *Animal Legal Def. Fund*, 104 F.3d at 431. A "quasi-public" organization is one that, while technically private, is "created or permeated by the federal government." *Id.* at 428 (citing *Pub. Citizen*, 491 U.S. at 463). The Circuit, in *Animal Legal Defense Fund*, pointed to the National Academy of Sciences ("NAS") as an archetypal example of a quasi-public organization,

15

because the NAS, although organized as a private corporation, was created and funded by Congress. *Id.* at 429.

Here, the plaintiff makes no allegations concerning a quasi-public organization's involvement in creating the NACC. *See generally* Compl.; Pl.'s Opp'n. The plaintiff, likewise, offers nothing to suggest that the federal government created, permeates or funds the SPP, the NACC, the Council of the Americas or the U.S. Chamber of Commerce in a manner allowing the court to draw comparisons with quasi-public organizations such as the court did in *Animal Legal Def. Fund*. *Id.* Therefore, the court concludes that the plaintiff has not alleged that the NACC was formed by a quasi-public organization. *See Animal Legal Def. Fund*, 104 F.3d at 431; *see also Food Chem. News*, 900 F.2d at 333 (holding that the FACA did not apply to the committee at issue partly because the organization that created it was not "quasi-public"); *Wash. Toxics Coal. v. U.S. Envtl. Prot. Agency*, 357 F. Supp. 2d 1266, 1273 (W.D. Wash. 2004) (denying plaintiff's motion to dismiss because, among other reasons, the organization that created the committee at issue was not quasi-public).

Although the plaintiff details how the DOC "established" and continues to "utilize" the NACC in the familiar, colloquial sense of those terms, Compl. ¶¶ 9-27, this Circuit has rejected such broad, literal interpretations of these words in the FACA context. *See, e.g.*, *Pub. Citizen*, 491 U.S. at 463-64 (stating that "a literalistic reading [of the FACA] would catch far more groups and consulting arrangements than Congress could conceivably have intended"); *Animal Legal Def. Fund*, 104 F.3d at 428 (stating that "the definition given by the Court to [the term 'utilized'] focuses not so much on how it is used but whether or not the character of its creating institution can be thought to have a quasi-public status"); *Wash. Legal Found.*, 17 F.3d at 1450

(holding that the "word 'utilized' in [the FACA context] . . . is a stringent standard, denoting something along the lines of actual management or control of the advisory committee"); *Food Chem. News*, 900 F.2d at 332-33 (stating that in the FACA context "'established' indicates a Government-formed advisory committee, while 'utilized' encompasses [a committee] so closely tied to an agency as to be amenable to strict management by agency officials") (internal citations omitted). Accordingly, because the court holds that the plaintiff has failed to allege that the defendants "established" or "utilize" the NACC within the meaning of the FACA, the court concludes that the plaintiff has failed to adequately plead that the FACA applies to the NACC, and therefore the plaintiff does not state a claim for relief.[6]

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to dismiss. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 7th day of September, 2010.

RICARDO M. URBINA<br>
United States District Judge

---

[6] As a result, the court does not reach the merits of the defendants' arguments that the NACC was not created or used in the interest of obtaining advice or recommendations for the government as required under the FACA, that the FACA does not apply to foreign proceedings, foreign governments or foreign citizens, and that there would be no basis for an order requiring the DOC to produce documents irrespective of the statutory Freedom of Information Act exemptions. Defs.' Mot. at 15-18, 22-23.